BRUCE L. SIMON (#96241)
ESTHER L. KLISURA (#221171)
**COTCHETT, PITRE, SIMON & McCARTHY**
840 Malcolm Road, Suite 200
Burlingame, California 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
bsimon@cpsmlaw.com
eklisura@cpsmlaw.com

GEOFFREY SPELLBERG (#121079)
**MEYERS, NAVE, RIBACK, SILVER & WILSON**
50 California Street, Suite 3050
San Francisco, California 94111
Tel: (415) 837-0456
Fax: (415) 398-2625
gspellberg@meyersnave.com

*Counsel for Plaintiffs and the Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRÉ FLEURY, d/b/a SWISS WATCH CO., on behalf of himself and all others similarly situated, and LIZ HART, an individual consumer, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CARTIER INTERNATIONAL, a French Company, and RICHEMONT NORTH AMERICA, INC., a Delaware corporation and successor to Cartier, Inc.,<br><br>Defendants. | Case No. C-05-4525-EMC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

LAW OFFICES
COTCHETT,
PITRE, SIMON &
McCARTHY

**First Amended Class Action Complaint for Damages and Injunctive Relief**

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................. 1
II. JURISDICTION AND VENUE ....................................... 1
III. PARTIES ......................................................... 2
    A. PLAINTIFFS ................................................ 2
    B. DEFENDANTS .............................................. 2
    C. AGENCY / JOINT VENTURE ................................... 3
IV. CLASS ALLEGATIONS ............................................ 3
V. TRADE AND COMMERCE AFFECTED ................................ 6
VI. RELEVANT PRODUCT AND GEOGRAPHICAL MARKET .............. 6
VII. WRONGFUL CONDUCT/ANTITRUST VIOLATIONS ................... 8
VII. INJURY ......................................................... 9
FIRST CAUSE OF ACTION
    Illegal Tying Arrangements
    (Parts Tied to Service)
    (Per Se Tying - Sherman Act § 1) ...................................... 10
SECOND CAUSE OF ACTION
    Illegal Tying Arrangements
    (Parts Tied to Service)
    (Rule of Reason Tying - Sherman Act § 1) .............................. 11
PRAYER FOR RELIEF ................................................. 11
JURY DEMAND ...................................................... 13

## I. INTRODUCTION

1. Plaintiffs, André Fleury dba Swiss Watch Co. and Liz Hart, bring this action under the Sherman Antitrust Act and the Clayton Antitrust Act. Plaintiffs allege that defendants, Cartier International and Richemont North America, Inc. (formerly known as Cartier, Inc.), have implemented an unlawful tying arrangement whereby they condition the sale of Cartier watch parts on the purchase of watch maintenance and repair services. Plaintiffs believe that this tying arrangement has artificially inflated the prices of watch maintenance and repair services for Cartier watches and has caused injury to plaintiffs as alleged below.

## II. JURISDICTION AND VENUE

2. The jurisdiction of this court is invoked, and this action is instituted under the provisions of Sections 1331, 1337 and 2201 of Title 28 of the United States Code, and Sections 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22 and 26), to declare the rights of plaintiffs and the class of persons on whose behalf this action is brought, to prevent and restrain the unlawful acts of defendants, and to recover damages sustained by plaintiffs and members of the class as a result of violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

3. Defendants Cartier International and Richemont North America, Inc. (hereinafter collectively referred to as "Cartier"), transact a substantial amount of business in the Northern District of California, including the sale of Cartier watches, parts and service. Cartier is engaged in interstate commerce, and the violations of law asserted herein have occurred in interstate commerce. Cartier, as hereinafter set forth, has intentionally violated Section 1 of the Sherman Act through acts which, in part, occurred in the Northern District of California and which have injured plaintiffs, and each of them, in their trade and business.

///

## III. PARTIES

### A. PLAINTIFFS

4. Plaintiff ANDRÉ FLEURY, d/b/a SWISS WATCH CO., is a California company with its principal place of business in San Rafael, California.

5. Plaintiff André Fleury is a watchmaker and graduate of the prestigious Technicum Neuchâtelois in Switzerland. Plaintiff sells and repairs watches. He repairs all kinds of watches, including the finest quartz watches, the most complicated modern watches, and antique watches. Plaintiff desires to repair Cartier watches, and has asked Cartier to sell him parts to accomplish said repairs so as to save his customers substantial costs charged by Cartier for repairs and parts.

6. Plaintiff LIZ HART is an individual consumer who has owned numerous Cartier watches over the years and currently owns a Cartier watch. Hart wants to have her Cartier watches maintained, serviced, and repaired by independent watchmakers like plaintiff Swiss Watch Co. because of the cost savings and convenience that independent watchmakers offer. However, as a result of Cartier's unlawful tying arrangement, Hart has been unable to purchase service for her Cartier watches from independent watchmakers. During the class period, Hart was forced to purchase service for one of her Cartier watch from a Cartier Retail Boutique. Cartier's unlawful tying arrangement has caused Hart economic damage in the form of inflated watch repair costs that she would not have paid if it was not for the wrongful conduct alleged herein.

### B. DEFENDANTS

7. Defendant CARTIER INTERNATIONAL is a corporation duly organized and existing under the laws of France, and has its principal place of business in Paris, France. Cartier International is responsible for coordinating and consulting on the global branding, marketing and communications strategy for the companies that are responsible for marketing and distributing Cartier-branded products.

8. Defendant RICHEMONT NORTH AMERICA, INC. (formerly known as Cartier, Inc.) is a corporation duly organized and existing under the laws of Delaware,

and has its principal place of business in New York. Richemont North America, Inc. is the successor in interest to Cartier, Inc.

9. Both CARTIER INTERNATIONAL and RICHEMONT NORTH AMERICA, INC. have, and transact, business in the Northern District of California. A Cartier Retail Boutique is located in San Francisco, California, and in Palo Alto, California, within the Northern District of California.

10. Cartier is in the business of selling, maintaining, and repairing purportedly high end watches throughout the United States, as well as selling replacement parts for such watches. Cartier manufactures, markets, sells and distributes its watches under its own brand name.

### C. AGENCY / JOINT VENTURE

11. At all times herein mentioned, defendants, and each of them, were agents or joint venturers of each of the other defendants, and in doing the acts alleged herein were acting within the course and scope of such agency. Each defendant had actual and/or constructive knowledge of the acts of each of the other defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

## IV. CLASS ALLEGATIONS

12. Plaintiffs bring this action both on behalf of themselves and as a class action on behalf of all watchmakers and consumers in the United States (except Cartier and its affiliates) for the class period of January 1, 2001 to the present. There are two sub-classes which are defined as follows:

    (a) <u>The Watchmaker Sub-Class</u>: This sub-class consists of watchmakers, such as plaintiff Swiss Watch Co., who are not authorized Cartier dealers, and who are deprived of the right to purchase Cartier parts for the maintenance, service and repair of Cartier watches, as well as not being able to perform said maintenance, service and repair.

///

  (b) <u>The Consumer Sub-Class</u>: This sub-class consists of owners of Cartier watches who have been forced to purchase watch repair and maintenance services from Cartier because of the unlawful tying arrangement alleged herein, including but not limited to Cartier's parts policy, and have been deprived of the cost savings and convenience of equivalent services offered by the watchmaker sub-class.

13. Prosecution of plaintiffs' claims as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met.

14. Cartier has sold watches, parts and service to tens of thousands of customers throughout the Untied States during the class period. There are also hundreds of independent watchmakers throughout the United States. Thus, the members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at this time, Cartier's own disclosures indicate that many thousands of watches, parts and services have been sold in the United States during the class period. Members of the Class and the amount of each member's purchase of watches, parts or service for such equipment from Cartier may be identified from records maintained by Cartier.

15. There are numerous questions of law and fact arising from Cartier's anticompetitive conduct that are common to the Class. The questions of law and fact common to the Class include:

  (a) The definition of the relevant markets involving the parts for Cartier watches as well as the maintenance, service and repair of such watches.

  (b) Whether Cartier engaged in illegal tying arrangements with regard to their parts, maintenance, service and repair in the United States in violation of Section 1 of the Sherman Act.

///

(c) Whether Cartier entered into any contract, combination or conspiracy with others to restrict the sale of parts, service, maintenance and/or repair in the United States in violation of Section 1 of the Sherman Act.

(d) Whether plaintiffs and the other members of the Class were injured by reason of the unlawful conduct of Cartier.

16. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs' claims fairly encompass the claims of the members of the Class. Plaintiffs and the members of the Class are similarly or identically harmed by the same systematic and pervasive pattern of Cartier's anticompetitive conduct. All members of the Class were injured in their business or property by reason of the unlawful conduct of Cartier alleged herein. As customers of Cartier during the class period, all members of the consumer sub-class purchased watch service from Cartier. Those in the watchmaker sub-class were watchmakers who were forced to send their Cartier customers to Cartier for parts and service because of Cartier's policy of not providing watchmakers their parts and requiring that Cartier service the watches.

17. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. There are no material conflicts between the claims of the plaintiffs and the members of the Class such that certification is inappropriate. Counsel for the Class will vigorously assert the claims of the members of the Class.

18. The questions of law or fact common to the members of the Class predominate over any questions affecting only its individual members. Plaintiffs will be able to demonstrate a viable method for proving common impact and damages to the Class.

19. Increased competition would have prevented Cartier from engaging in the anticompetitive practices of excluding members of the watchmaker sub-class from becoming authorized Cartier watch dealers, and using the Cartier brand name as leverage to force maintenance, service and repairs to be done only by Cartier. When Cartier faced

competition from watchmakers similarly situated to plaintiffs, it would not accept their repair and parts requests and would not allow them to become repair Cartier watches. By virtue of this exclusion, Cartier substantially narrowed competition and maintained a monopoly.

20. A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. The damages suffered by individual class members may be relatively small in light of the substantial expense and burden of litigation of this type, and the prohibitive cost of individual actions would make it impossible for the Class members separately to redress the wrongs they have suffered. There will be no material difficulty in the management of this action as a class action.

## V. TRADE AND COMMERCE AFFECTED

21. At all times pertinent to this Complaint, Cartier has sold high-end watches, as well as parts, maintenance, service and repair, in interstate commerce.

22. The unlawful conduct of defendants described herein has affected United States interstate trade and commerce in the same of such products and services.

## VI. RELEVANT PRODUCT AND GEOGRAPHICAL MARKET

23. Independent watchmakers, such as plaintiff Swiss Watch Co., and Cartier compete in the following relevant market: the sale of parts, maintenance, service and repair to consumers who own Cartier watches in the United States.

24. In addition to the facts alleged above, Cartier sells their watches to consumers through authorized dealers and Cartier Retail Boutiques. Consumers of these high-end watches may choose to take them to a highly qualified and certified watchmaker, like plaintiff, Swiss Watch Co., out of loyalty, convenience and cost savings.

25. These consumers require maintenance and service of their watches in a timely and cost-effective manner. Cartier claims that watchmakers like plaintiff, Swiss Watch Co., cannot do the maintenance and service because of the purported quality of

Cartier watches. However, this explanation is pretextual because many of the high-end Cartier watches have relatively inexpensive inner workings compared to other high-end watches. Thus, there is no legitimate reason to exclude highly qualified watchmakers such as plaintiff from buying Cartier parts for maintenance, service and repair.

26. Access to parts from Cartier is essential for watchmakers to maintain, service or repair said watches. Watchmakers attempting to compete against Cartier for the servicing of Cartier watches would need a steady and reliable supply of parts in order to compete effectively. Without a steady and reliable supply of Cartier parts, entry into the business of maintaining, servicing and repairing Cartier watches is impossible.

27. Cartier has enhanced the anticompetitive effect of its restrictive parts policy by limiting watchmakers' access to other potential sources of their parties.

28. Cartier has reinforced the anticompetitive effect of its parts policy by repeatedly representing to consumers and watchmakers that they should not employ the services of unauthorized watchmakers because the unauthorized watchmakers cannot obtain Cartier parts. Cartier has also stated or implied to customers that if these watchmakers have obtained parts, they may have obtained them improperly. Cartier's disparagement campaign against independent watchmakers is designed to enhance the exclusionary effect of its parts policy and gives consumers a false impression that such watchmakers are disreputable competitors.

29. Cartier adopted and implemented these policies and practices to preserve the high price of parts, maintenance, service and repair in the relevant market. Through these policies and practices, Cartier intended to make it more difficult for watchmakers to sell and service Cartier watches, and Cartier succeeded. Cartier's parts policies and practices have had substantial anticompetitive effects. They have deprived independent watchmakers of the only source of parts for Cartier watches needed by watchmakers to compete against Cartier. Many watchmakers have lost substantial revenues. Furthermore, potential competitors have been deterred from entering the relevant market. Customers have been forced to use the higher priced Cartier services and parts rather than

1  go to their local watchmaker. Class members have been deprived of the benefits of
2  unrestrained competition and the lower costs of service that increased competition would
3  have produced.

## VII. WRONGFUL CONDUCT/ANTITRUST VIOLATIONS

30. For many years, Cartier has competed with independent watchmakers to sell, maintenance and repair services for Cartier watches. The relevant service market in which Cartier has competed to sell the service of parts for Cartier watches during the relevant time period of this lawsuit is national in scope.

31. Cartier's service and repair of their watches is provided at uniform, nationwide list prices pursuant to standardized form contracts. Independent watchmakers can provide service equal to or better than the service provided by Cartier at prices substantially lower than Cartier's prices.

32. As of January 1, 2003, Cartier advised all watchmakers, and other resellers of Cartier watches and service, that service on Cartier watches would "only be available to consumers through Cartier Retail Boutiques, authorized Cartier watch dealers, and directly with Cartier After Sales Service Department." (See Exhibit A.) In addition, Cartier instructed independent watchmakers, such as plaintiff, Swiss Watch Co., that all customer inquiries should be directed to Cartier. *Id.*

33. Cartier subsequently enforced this policy and adopted and implemented other anticompetitive policies alleged in this Complaint on a nationwide basis. Any reasons proffered by Cartier for its policies are pretextual. Cartier's anticompetitive policies are objectively baseless and subjectively motivated by a desire to restrict competition. The adoption and enforcement of these policies and practices have had the effect of eliminating or restricting competition for the service of Cartier watches throughout the United States. In particular, these policies and practices operated as a substantial barrier against independent watchmakers from competing against Cartier.

34. In the absence of Cartier's restrictive parts policy and other anticompetitive practices by Cartier, ease of entry into the business of servicing and repairing Cartier

watches would have been significantly easier. There would have been a significant increase in the number of watchmakers competing for such business. This increased competition would have forced Cartier to charge competitive prices to all consumers nationwide for the sale of parts, maintenance, service and repair. For example, in one instance, a repair that was estimated by Cartier at $868.20, was done by plaintiff Swiss Watch Co. for $245. Cartier's estimate included a $140 dial and a $250 gold crown. Neither replacement was needed and, therefore, not charged by plaintiff. By requiring that Cartier watches be maintained, serviced and repaired only by Cartier, or its authorized dealers, Cartier is excluding hundreds of independent watchmakers, like plaintiff from competing against Cartier. These independent watchmakers are qualified to do the repairs, could do them closer to the homes of Cartier customers, and for a substantially lower price than Cartier or its authorized dealers.

35. Although Cartier's policy permits authorized Cartier dealers to perform service on Cartier watches, not all authorized Cartier dealers have a watchmaker on site. Even when an authorized Cartier dealer has a watchmaker on site, the watchmaker may only be able to perform basic services and may not able to perform a full range of watch repair services. For example, many authorized Cartier dealers are unable to perform a complete overhaul of a Cartier watch on site and will send a watch needing such work to Cartier's After Sales Department.

## VII. INJURY

36. As a direct and proximate result of Cartier's conduct, plaintiffs and the Class members have been injured in their property and business. In particular, Cartier's conduct has had the effect of eliminating and excluding competitors in the relevant markets, maintaining Cartier's market power in those markets and substantially decreasing competition in those markets. In addition, Cartier's exclusionary and unlawful conduct has substantially increased the prices paid by consumers for servicing Cartier watches and has allowed Cartier to decrease the level of competition that would otherwise have prevailed in the relevant market.

# FIRST CAUSE OF ACTION

## Illegal Tying Arrangements

### (Parts Tied to Service)

### (Per Se Tying - Sherman Act § 1)

37. Plaintiffs incorporate by reference as if fully set forth, all the allegations set forth above.

38. Through its parts policy and other anticompetitive practices, Cartier has conditioned, and is conditioning, the sale of parts for their watches (the "tying product") to the consumer's purchase of service, maintenance and repair for such watches from Cartier (the "tied product"). Cartier has sold parts for Cartier watches to authorized Cartier dealers on the condition that they not sell those parts to independent watchmakers like plaintiff, Swiss Watch Co.

39. The tying product – parts for use in Cartier watches – is a separate product from the tied product – maintenance, service and repair for those watches. Demand for the two products can be separated, and there is sufficient demand for each product separately that it is economically efficient to offer the two products separately. Cartier has sold, and continues to sell, parts for its watches separate from service.

40. Cartier has sufficient economic power in the market for parts for their watches to enable it to restrain trade appreciably in the market for the service, maintenance and repair of those watches. Cartier's tying arrangement has been successful. Cartier has been able to force consumers that need to purchase Cartier parts to buy service, maintenance and repair for their watches from Cartier. If Cartier had not imposed the tying arrangement, many owners of Cartier watches would have bought service for their watches from a watchmaker such as plaintiff, Swiss Watch Co.

41. Cartier's conduct has injured competition and, as a consequence, the watchmaker sub-class has been deprived of the right to compete with Cartier for the business of maintaining, servicing and repairing their watches.

///

42. Cartier's tying arrangement has harmed competition and foreclosed a substantial amount of commerce in the markets for the sale and service of Cartier watches. Cartier's tying arrangement has caused injury to both watchmakers and consumers. Class members have been wrongfully denied the benefits of fair competition.

43. Cartier's tying arrangement involving parts and service is objectively baseless and subjectively motivated by a desire to restrict competition. This arrangement imposes excessive burdens, and any legitimate business purposes could be accomplished by less restrictive means.

44. This tying arrangement constitutes a *per se* violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## SECOND CAUSE OF ACTION
## Illegal Tying Arrangements
## (Parts Tied to Service)
## (Rule of Reason Tying - Sherman Act § 1)

45. Plaintiffs incorporate by reference as if fully set forth, all the allegations set forth above.

46. Even if Cartier's tying arrangement involving parts and service for watches is not a *per se* violation of Section 1 of the Sherman Act, its tying arrangement unreasonably restrains competition in the relevant market and constitutes a rule of reason violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray for relief as follows:

A. The Court declare and decree that defendants' acts, conduct and practices are unlawful under Section 1 of the Sherman Act (15 U.S.C. § 1);

B. The Court enjoin defendants, as well as its officers, agents, servants, employees and attorneys and those persons in active concert, contract, combination, conspiracy or participation with them who shall receive actual notice of the Court's


LAW OFFICES
COTCHETT,
PITRE, SIMON &
MCCARTHY

injunction, from continued engagement in those acts, forms of conduct and practices found to be illegal, as provided by Section 16 of the Clayton Act (15 U.S.C. § 26; *see also* 15 U.S.C. § 4);

  C. That the Court award plaintiffs and members of the Class threefold their actual antitrust damages sustained as a result of defendants' antitrust violations, as provided by Section 4 of the Clayton Act (15 U.S.C. § 15);

  D. That the Court award plaintiffs and members of the Class reasonable attorneys' fees and costs as provided by Section 4 of the Clayton Act (15 U.S.C. § 15) and the common fund doctrine;

  E. That the Court award plaintiffs and members of the Class pre-judgment and post-judgment interest as permitted by law; and

  F. That the Court award plaintiffs and members of the Class such other and further relief at law or in equity as the Court may deem just and proper.

DATED: May 10, 2005

       **COTCHETT, PITRE, SIMON & McCARTHY**
       **MEYERS, NAVE, RIBACK, SILVER & WILSON**

       By: _____
         BRUCE L. SIMON
         *Counsel for Plaintiffs and the Class*

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Rule 3-6 of the Local Rules for the Northern District of California, plaintiffs demand trial by jury on all issues so triable.

DATED: May 10, 2005

**COTCHETT, PITRE, SIMON & McCARTHY**
**MEYERS, NAVE, RIBACK, SILVER & WILSON**

By: _____
BRUCE L. SIMON
*Counsel for Plaintiffs and the Class*

# Exhibit A



JOAILLIERS
PARIS    LONDON    NEW YORK

653 FIFTH AVENUE AT 52ND STREET - NEW YORK, NY 10022

MARTIN GATINS
VICE PRESIDENT

TEL 212 446 3720
FAX 212 755 0290

To Whom it May Concern:

Please be advised that as of January 1, 2003 all after sales service on Cartier Watches will only be available to consumers through the following means:

- Cartier Retail Boutiques:
    - 1-800-Cartier or
    - www.Cartier.com to locate the most convenient location

- Authorized Cartier Watch Dealers:
    - 1-800-Cartier or
    - www.Cartier.com to locate the most convenient location

- Directly with Cartier After Sales Service Department:
    - 1-888-537-6878
    - P.O. Box 610508
    - 1225 Royal Lane
    - DFW Airport, TX 75261

If customers of yours inquire about obtaining repairs on Cartier Watches, please ask them to call 1-800-Cartier, visit our web site at www.Cartier.com or call Cartier After Sales Service directly at 1-888-537-6878.

Sincerely,

Martin Gatins

MG/pjh