**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRÉ FLEURY, d/b/a SWISS WATCH
CO., *et al.*,

            Plaintiff,

      v.

CARTIER INTERNATIONAL, a French
company, and RICHEMONT NORTH
AMERICA, an American company,

            Defendant.

_____/

No. C-05-4525 EMC

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS CARTIER
INTERNATIONAL**

**(Docket No. 57)**

      Plaintiffs André Fleury, d/b/a Swiss Watch Co., and Liz Hart brought this action on behalf of themselves and all others similarly situated ("Plaintiffs") against Defendants Cartier International and Richemont North America ("Defendants"), alleging violations of antitrust law.  Currently pending before this Court is Defendants' motion to dismiss the class action complaint.  This matter came for hearing on September 15, 2006.  Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion without prejudice and dismisses Cartier International from the case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiffs bring this action on their own behalf and as a class action alleging that Defendants engaged in an arrangement unlawfully tying the sale of Cartier watch parts to the purchase of Cartier-authorized watch maintenance and repair services in violation of the Sherman Act and Clayton Act.  Plaintiffs filed their original complaint on November 11, 2005.  Defendants subsequently filed a motion to dismiss Cartier International from the suit on the basis that the Court lacked personal

United States District Court

For the Northern District of California

1    jurisdiction over the company.  In support of the motion, Defendants submitted the declaration of

2    Francois Lepercq, Chief Financial Officer of Cartier International.  According to Mr. Lepercq,

3    Cartier International does not have any business dealings in the United States, including

4    responsibility for the policies and practices which Plaintiffs allege to be unlawful.  The Court took

5    Defendants' motion to dismiss under submission and instructed the parties to meet and confer to

6    discuss the identification of proper defendants.  Plaintiffs thereafter filed an amended complaint, and

7    Defendants filed their second motion to dismiss Cartier International for lack of personal

8    jurisdiction.  This is the motion currently pending before the Court.

## II.    DISCUSSION

A.    <u>Legal Standard</u>

     Where the court considers a motion to dismiss without holding an evidentiary hearing, the
plaintiff need only make a prima facie showing of facts sufficient to support personal jurisdiction.
*See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).  The plaintiff's
allegations are taken as true if they are not controverted by the defendant.  *See id.*  If the plaintiff's
allegations are controverted by the defendant, then "facts, not mere allegations, must be the
touchstone."  *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).

B.    <u>Specific Jurisdiction</u>

     There are two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction.  At
the hearing on the second motion to dismiss, Plaintiffs conceded that they were invoking only the
Court's specific jurisdiction over Cartier International.[1]  A defendant subject to the specific

---

     [1] In their papers, Plaintiffs had appeared to argue that the contacts of Richemont North America could be ascribed to Cartier International for the purpose of establishing general jurisdiction over Cartier International. The Ninth Circuit recognizes two exceptions to the presumption of corporate separateness for the purpose of establishing jurisdiction: alter ego and general agent relationships. *See Harris Rutsky & Co. v. Bell & Clements Limited*, 328 F.3d 1122, 1134-35 (9th Cir. 2003).  The test for an alter ego relationship requires: "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984).  The test for a general agency relationship requires the agent perform services "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Wells Fargo & Co. v. Wells Fargo Exp. Co.* 556 F.2d 406, 423 (9th Cir. 1977).  Plaintiffs did not present facts to support either exception to the presumption of corporate separateness.

**United States District Court**

For the Northern District of California

1   jurisdiction of a forum may only be sued for matters related to its contacts with the forum.  *See Doe,*
2   *I v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  The Ninth Circuit has established a three-
3   prong test for analyzing a claim of specific jurisdiction:

> (1)   The non-resident defendant must purposefully direct activities
>       or consummate some transaction with the forum or resident
>       thereof; or perform some act which he purposefully avails
>       himself of the privilege of conducting activities in the forum,
>       thereby invoking the benefits and protection of its laws;
>
> (2)   the claim must be one which arises out of or relates to the
>       defendant's forum-related activities; and
>
> (3)   the exercise of jurisdiction must comport with fair play and
>       substantial justice.

10  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

11          With respect to the first prong above, the Court applies the "purposeful direction analysis"
12  which applies to claims which sound in tort such as Plaintiffs' antitrust claims.  *See id*. at 803-04.
13  The Ninth Circuit has instructed that purposeful direction should be evaluated under the three-part
14  "effects" test originated in *Calder v. Jones*, 465 U.S. 783, (1984).  *See Schwarzenegger*, 374 F.3d at
15  804.  To satisfy the effects test, Plaintiffs must make a prima facie showing that Cartier International
16  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that
17  [Cartier International] knows is likely to be suffered in the [United States]."  *Id*.

18          Regarding the second prong -- *i.e.*, that the claim must be one that "arises out of" the
19  defendant's forum-related activities -- the Ninth Circuit requires that there be a "but for" causal
20  relation between the contact of the defendant with the forum and the plaintiff's claim.  *See Shute v.*
21  *Carnival Cruise Lines*, 897 F.2d 377, 383-86 (9th Cir. 1990).

22          Finally, if the plaintiff establishes the first two prongs, the burden shifts to the defendant to
23  make a "compelling case" disproving the third prong.  *See Schwarzenegger*, 374 F.3d at 802.  In
24  sum, Plaintiffs' initial burden is to make a prima facie showing that Cartier International took some
25  affirmative action that both satisfies the "effects test" and is a "but for" cause of Plaintiffs' claim.

26          Plaintiffs allege that Cartier International "adopted and implemented the policies and
27  practices" of limiting access to Cartier replacement parts.  Defendants have rebutted this allegation
28  through the declaration of Mr. Lepercq which claims that Richemont North America makes the

**United States District Court**

For the Northern District of California

1    relevant business decisions and not Cartier International.  In essence, Defendants contend that Cartier

2    International is not responsible for the tying practice alleged by Plaintiffs.

3         Plaintiffs contend there are several facts in support of their assertion of personal jurisdiction

4    over Cartier International.  First, Plaintiffs assert, and Defendants do not contest, that Cartier

5    International is responsible for "coordinating and consulting on the global branding, marketing and

6    communications strategies for the companies that are responsible for marketing and distributing

7    Cartier-branded products."  Lepercq Decl. ¶ 2.  However, Plaintiffs present no evidence that the

8    challenged tying policy is part of any global branding, marketing, or communication strategy

9    described by Mr. Lepercq.  In fact, Mr. Lepercq states that decisions regarding the selection of

10   retailers in the United States authorized to provide "after sales service" and/or to receive parts are

11   made by employees of Richemont North America.

12        Second, Plaintiffs assert that Cartier International contracted to purchase tracking

13   mechanisms from GenuOne to install in its products for the purpose of monitoring Cartier products

14   worldwide.  In response, Defendants claim, *inter alia*, that the reported contract was between a

15   different Cartier company (Cartier International, B.V.) and GenuOne and that the tracking system

16   was never actually implemented.  Moreover, Plaintiffs do not explain how implanting tracking

17   devices in Cartier watches is causally related to the alleged tying policy.

18        Third, Plaintiffs claim that Cartier International has created the illusion of one global brand

19   through the use of a common website.  Plaintiffs argue that this global branding constitutes

20   purposeful availment through the United States viewers and customers it contacts on its website.  *See*

21   Opp'n at 8 (citing *EDIAS Software Int'l, L.L.C. v. BASIS Int'l, Ltd.*, 947 F. Supp. 413, 417 (D. Ariz.

22   1996)).  In *EDIAS Software,* the court addressed both a contract claim and tort claim.  *See EDIAS*,

23   947 F. Supp. at 418.  In discussing the tort claim for defamation via web-postings and email, the

24   court applied the purposeful direction test.  *See id.* at 418-20.  The internet contacts conferred

25   jurisdiction under an effects test in *EDIAS Software* because they were themselves the vehicle for the

26   harm suffered by the plaintiff in the forum.  *See id.* at 420.  The global branding on Cartier's website

27   does not satisfy the purposeful direction test because the harm in the instant case is not the global

28   branding but the alleged tying policy.

United States District Court

For the Northern District of California

1    Fourth, Plaintiffs assert, and Defendants do not contest, that Cartier International suggests

2   prices for Cartier-branded products to Richemont North America.  Suggesting retail prices, however,

3   is not causally related to Plaintiffs' claim.  It is the tying of parts and services, not the pricing of

4   Cartier products, that is at issue here.

5    Fifth, Plaintiffs assert that Richemont North America admitted some connection between

6   their distribution system and Cartier International in an interrogatory response.  The interrogatory

7   response states: "*Cartier's* policies and procedures concerning the distribution of watch parts and the

8   servicing of Cartier watches are complementary to Richemont North America's selective distribution

9   system of Cartier watches." Resp. to Interrogatory No. 2 (italics added).  Plaintiffs understand

10   "Cartier's" to mean "Cartier International's."  Defendants, however, state that this sentence has

11   nothing to do with Cartier International and that it is merely reiterating that Richemont North

12   America distributes watch parts and services watch parts according to its selective distribution

13   system.  That assertion is not rebutted.

14    In sum, Defendants deny that Cartier International had any role in the implementation of the

15   allegedly unlawful policies; there are no facts proving Cartier International took action purposefully

16   directed at the United States that was the cause of the alleged tying scheme.  Accordingly, the Court

17   grants Defendants' motion to dismiss Cartier International from this litigation.  The dismissal,

18   however, shall be without prejudice.

19   C.   Jurisdictional Discovery

20    Because there is a possibility that other Cartier entities affiliated with Richemont North

21   America might properly be made parties in this litigation, the Court in its discretion will allow

22   Plaintiffs to conduct discovery on Richemont North America to determine whether there are other

23   defendants who should be added to the suit.  *Cf. Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093

24   (9th Cir. 2003) (court has discretion to permit discovery into jurisdictional matters); *Wells Fargo &*

25   *Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 (9th Cir. 1977); *Cheng v. Boeing Co.*, 708 F.2d

26   1406, 1412 (9th Cir. 1983).

27

28

**III.   CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss Cartier International is granted without prejudice.

This order disposes of Docket No. 57.


IT IS SO ORDERED.


Dated:  October 13, 2006

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**

For the Northern District of California