Bruce L. Simon (SBN 96241)
PEARSON, SIMON, SOTER, WARSHAW & PENNY LLP
44 Montgomery Street, Suite 1200
San Francisco, CA  94104
Telephone:  (415) 433-9000
Facsimile:  (415) 433-9008
Email:  bsimon@psswplaw.com

Geoffrey Spellberg (SBN 121079)
MEYERS, NAVE, RIBACK, SILVER & WILSON
575 Market Street, Suite 2600
San Francisco, CA  94105
Telephone: (415) 421-3711
Facsimile: (415) 421-3767
Email:  gspellberg@meyersnave.com

*Settlement Class Counsel and Counsel for Plaintiffs*
*Liz Hart, Mike Mertaban, Dennis Warner, and*
*Charles Cleves*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDRÉ FLEURY, d/b/a SWISS WATCH CO., MIKE MERTABAN, d/b/a WATCH EXPERTS, DENNIS WARNER, and CHARLES CLEVES, on behalf of themselves and all other similarly situated watchmakers, and LIZ HART, on behalf of herself and all others similarly situated consumers, <br><br>        Plaintiffs, <br><br>    vs. <br><br> RICHEMONT NORTH AMERICA, INC., <br><br>        Defendant. | Case No. C05-04525 EMC <br><br> **NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND CLASS REPRESENTATIVE INCENTIVE AWARDS** <br><br> Date:  May 7, 2008 <br> Time:  2:30 p.m. <br> Dept:  C, 15th Floor <br><br> Honorable Edward M. Chen |

1
## NOTICE OF MOTION

2
**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3
    PLEASE TAKE NOTICE that on May 7, 2008 at 2:30 p.m., or as soon thereafter as

4
the matter may be heard before the Honorable Edward M. Chen, United States Magistrate

5
Judge for the Northern District of California, 450 Golden Gate Avenue, Courtroom C, San

6
Francisco, California 94102, plaintiffs Liz Hart, Mike Mertaban, Dennis Warner, and

7
Charles Cleves will and hereby do move the Court for an award of attorneys' fees,

8
litigation expenses, and class representative incentive awards.  This motion is made on

9
grounds that: (a) such fees are fair and reasonable in light of Settlement Class Counsel's

10
efforts in obtaining the Settlement herein; (b) the requested attorneys' fees comport with

11
the applicable case law; (c) the expenses for which reimbursement is sought were

12
reasonably and necessarily incurred in connection with the prosecution of this action; and

13
(d) a reasonable payment to plaintiffs Hart and Mertaban for their efforts on behalf of the

14
Class is warranted and appropriate.  By this motion, plaintiffs seek:

15
- $1,884,123.93 in attorneys' fees;

16
- reimbursement for $105,876.07 in litigation expenses;

17
18
- $5,000 incentive payment to Consumer Sub-Class Representative Liz Hart; and

19
20
- $5,000 incentive payment to Watchmaker Sub-Class Representative Mike Mertaban.

21
    This motion is based on this Notice of Motion, the following Memorandum of

22
Points and Authorities, the accompanying declarations, the complete file and record in this

23
action, and such additional evidence or argument as may be presented at the hearing.

24
/ / /

25
/ / /

26
/ / /

27
/ / /

28
/ / /

1    Dated:  April 2, 2008                    Respectfully submitted,

2
                                        By:    /s/ Bruce L. Simon
3                                              PEARSON, SIMON, SOTER, WARSHAW &
                                               PENNY, LLP
4
                                               MEYERS NAVE RIBACK SILVER &
5                                              WILSON

6                                              *Settlement Class Counsel and Counsel for
                                               Plaintiffs Liz Hart, Mike Mertaban, Dennis
7                                              Warner, and Charles Cleves*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

3                                                                                           **Page**

4

5    MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

6    I. INTRODUCTION ................................................................................................1

7    II. STATEMENT OF FACTS ....................................................................................1

8              A.    Procedural History ...............................................................................1

9              B.    The Settlement Agreement ...................................................................3

10   III.  ARGUMENT .........................................................................................................3

11             A.    Standard of Review..............................................................................3

12             B.    The Requested Attorneys' Fees are Fair, Adequate, and Reasonable ............4

13                   1.    Settlement Class Counsel's Efforts Resulted in a Valuable
                           Settlement....................................................................................4

14
                     2.    As a Percentage of the Settlement Value, the Requested
15                         Attorneys' Fees are Fair, Adequate, and Reasonable .......................7

16                         a.    Settlement Class Counsel Performed Legal Services
                                 With a High Level of Skill.........................................................8

17
                           b.    Settlement Class Counsel Were Required to Expend
18                               Substantial Time ....................................................................9

19                         c.    Settlement Class Counsel Accepted this Case on a
                                 Contingency Basis ..................................................................9

20
                     3.    Compared Against the Lodestar, the Requested Attorneys'
21                         Fees are Fair, Adequate, and Reasonable .............................................9

22             C.    The Objections to the Requested Attorneys' Fees are Without Merit..........12

23             D.    Class Counsel Should be Granted Reimbursement of Litigation Costs ........14

24             E.    Incentive Awards to Class Representatives Hart and Mertaban Should
                     be  Approved..............................................................................................16
25
     V.  CONCLUSION ....................................................................................................17
26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

); *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003)............................8

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ...................................................................7

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980). ....................................................4

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ..........................................4

*Fitzgerald v. City of Los Angeles*, No. CV03 1876 NM RZX, 2003 WL 25471424,
        at *2 (C.D. Cal. Dec. 8, 2003).................................................................................16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)............................................4

*Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL 34089697, at *12 (W.D.
        Wash. Mar. 26, 2001)..............................................................................................16

*Id.*        passim

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989). ..........................7

*In re Businessland Sec. Litig.*, No. C90-20476 RFP, 1991 WL 427887, at *3 (N.D.
        Cal. June 14, 1991).................................................................................................14

*In re General Instr. Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ..................................8

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d
        768, 821 (3rd Cir. 1995)...........................................................................................7

*In re Heritage Bond Litig.*, No. CV02-9221 DT (RCX), 2005 WL 1594389, at *16
        (C.D. Cal. June 10, 2005).......................................................................................14

*In re Medical X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515
        (E.D.N.Y. Aug. 7, 1998) ..........................................................................................8

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y.
        1998) ......................................................................................................................12

*In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1449 (N.D. Cal. 1994) ......................................8

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333
        (3rd Cir. 1998),.......................................................................................................7

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) .........................12

*In re THC Fin. Corp. Litig.*, 86 F.R.D. 721, 738 (D.C. Haw. 1980) .....................................4

1   *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975):..........................................10

2   *Mangone v. First USA Bank*, 206 F.R.D. 222, 228 (S.D. Ill. 2001) ......................................5

3   *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) .........................................4

4   *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997)........................................12

5   *Rothfarb v. Hambrecht*, 641 F. Supp. 71, 74 (N.D. Cal. 1986). ..........................................10

6   *Schwartz v. Citibank (South Dakota), N.A.*, 50 Fed Appx. 832, 836 (9th Cir. 2002)...........3

7   *See In re Abbot Laboratories Norvir Anti-Trust Litig.*, No. C04-1511 CW, 2007 WL
      1689899, at *4 (N.D. Cal. June 11, 2007). ..................................................................12

8
9   *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.
      1990) .................................................................................................................................7

10  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003), citing Fed. R. Civ. P.
      23(e). .................................................................................................................................4

11
12  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993)................................8

13  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ........16

    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) ......................................5
14
    *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) ..............12
15
    *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ........4
16
    *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1182 (N.D. Cal. 2004) ..................9
17
18  *Yeagley v. Wells Fargo & Co.*, No. C05-03403 CRB, 2008 WL 171083, at *7 (N.D.
      Cal. Jan. 18, 2008)............................................................................................................5

19  *Young v. Polo Retail, LLC*, No. C02-4546, 2007 WL 951821, at *5 (N.D. Cal. Mar.
      28, 2007) ...........................................................................................................................9
20

21  **STATUTES**

22  Fed. R. Civ. P. 23(h)..............................................................................................................14

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Settling Parties in this case have reached a fair, reasonable, and adequate Settlement that provides nearly $10 million in readily ascertainable benefits to the Settlement Class.  The Settlement is the result of hard fought litigation, including two motions to dismiss, several depositions, expert engagements, three mediation sessions, and several post-settlement filings and hearings.  If approved, the Settlement will provide valuable and prompt monetary relief to tens of thousands of Settlement Class members nationwide and promote increased competition in the repair of Cartier watches, while avoiding the risks and uncertainties of continued litigation.  By this motion, plaintiffs Liz Hart, Mike Mertaban, Dennis Warner, and Charles Cleves ("Settling Plaintiffs") and their counsel ("Settlement Class Counsel") respectfully request an award of attorneys' fees, reimbursement of litigation expenses, and class representative incentive awards, all to be paid by defendant Richemont North America, Inc. ("Richemont").

## II. STATEMENT OF FACTS

### A.    Procedural History

In the interest of brevity, Settling Plaintiffs incorporate the Statement of Facts set forth in the concurrently filed Joint Motion for Final Approval of Class Settlement by reference herein.  That Statement is augmented with the following details of Settlement Class Counsel's work on behalf of the Settlement Class:

- Settlement Class Counsel conducted a pre-litigation investigation of the facts in this case and developed the legal theories that formed the basis of the claims against Richemont;

- Settlement Class Counsel opposed two motions to dismiss;

- Settlement Class Counsel conducted jurisdictional discovery;

- Settlement Class Counsel prepared three complaints;

- Settlement Class Counsel met and conferred with defense counsel about a protective order, the timing and scope of discovery, the timing of class

1    certification, and other pretrial matters;

2    • Settlement Class Counsel prepared Initial Disclosures, propounded written

3    discovery on Richemont, and responded to written discovery from

4    Richemont;

5    • Settlement Class Counsel reviewed approximately 150 boxes of paper

6    documents and performed electronic searches, reviews, and coding of over

7    one million pages of electronic documents produced by Richemont;

8    • Settlement Class Counsel prepared for, traveled to New York on two

9    separate occasions for, and took the depositions of three of Richemont's

10   executives;

11   • Settlement Class Counsel prepared for and defended the depositions of

12   plaintiffs André Fleury and Liz Hart;

13   • Settlement Class Counsel traveled to New York for an in-person settlement

14   discussion with Richemont and its counsel;

15   • Settlement Class Counsel retained and worked with Roger G. Noll, a

16   Professor of Economics at Stanford University, to prepare an expert report on

17   class certification issues;

18   • Settlement Class Counsel drafted a motion for class certification;

19   • Settlement Class Counsel drafted a mediation brief and participated in a day-

20   long mediation with the Honorable Edward Infante;

21   • Settlement Class Counsel negotiated and prepared the documentation of the

22   Settlement;

23   • Settlement Class Counsel filed a motion to withdraw as counsel, and a

24   motion to intervene, in order to effectuate the Settlement;

25   • Settlement Class Counsel participated in two mediation sessions with the

26   Honorable Joseph C. Spero and prepared written submissions in advance

27   thereof;

28   • Settlement Class Counsel prepared a motion for preliminary approval of the

1          Settlement;

2     •    Settlement Class Counsel appeared for nine hearings before this Court;

3     •    Settlement Class Counsel responded to telephone calls and correspondence

4          from over 45 Settlement Class members after notice of the Settlement was

5          disseminated;

6     •    Settlement Class Counsel prepared the motion for final approval of the

7          Settlement; and

8     •    Settlement Class Counsel and their firms have expended over 3,000 hours of

9          professional time in this case over the past two and a half years.

10   *See* Declarations of Bruce L. Simon and Geoffrey Spellberg in Support of Motion for

11   Award of Attorneys' Fees, Litigation Expenses, and Incentive Awards (hereinafter "Simon

12   Fee Decl." and "Spellberg Fee Decl.," respectively).

13   **B.      The Settlement Agreement**

14        After all of the material terms of the Settlement were negotiated and agreed upon,

15   the Settling Parties negotiated the payment of attorneys' fees, litigation expenses, and

16   incentive awards.  Simon Fee Decl., ¶ 12.  The terms regarding fees, expenses, and

17   incentive awards were agreed upon in the presence of the Settling Parties and under the

18   auspices of Judge Infante.  *Id.*  The Amended Stipulation of Settlement provides that

19   Settlement Class Counsel shall apply to the Court for the payment of attorneys' fees in an

20   amount not to exceed $2 million, inclusive of all litigation expenses and $5,000 incentive

21   awards for plaintiffs Hart and Mertaban.  *Id.*  The Settlement also provides that Richemont

22   will not object to such application.  *Id.*  Any fees, costs, and incentive awards will be paid

23   separately by Richemont and will not diminish the benefits of the Settlement.  *Id.*

24                          **III.  ARGUMENT**

25   **A.      Standard of Review**

26        An agreement settling a class action may provide for the independent payment of

27   attorneys' fees by a defendant to class counsel in an amount subject to court approval.

28   *Schwartz v. Citibank (South Dakota), N.A.*, 50 Fed Appx. 832, 836 (9th Cir. 2002).  Like

1  every other aspect of a class settlement, such attorneys' fee provisions are "subject to the

2  determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'"

3  *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003), citing Fed. R. Civ. P. 23(e).

4  An award of attorneys' fees and expenses is within the discretion of the Court. *Petrovic v.*

5  *Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999).  However, "[t]he fee awarded should

6  be substantial enough to operate as a proper incentive for the future initiation of class

7  litigation serving the public interest." *In re THC Fin. Corp. Litig.*, 86 F.R.D. 721, 738

8  (D.C. Haw. 1980).  In the Ninth Circuit, courts have discretion to calculate attorneys' fees

9  based on either a percentage-of-the fund approach or lodestar/multiplier approach. *Hanlon*

10  *v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

11  **B.     The Requested Attorneys' Fees are Fair, Adequate, and Reasonable**

12  The requested attorneys' fees of $1,884,123.93 is a fair, adequate, and reasonable

13  compensation to Settlement Class Counsel for the benefits conferred on the Class,

14  particularly considering the contingent nature of the case, the complex facts and legal

15  issues presented, and the high quality of services provided.  The requested fees are also

16  well within the percentages awarded in similar litigation.

17                    **1.     Settlement Class Counsel's Efforts Resulted in a Valuable**

18                               **Settlement**

19  The first step in applying the percentage method of calculating attorneys' fees is to

20  establish the value of the class settlement.  In claims-made settlements, the percentage is

21  based on the entire value of the settlement, not just the value of the claims actually made.

22  *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997), citing

23  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480-81 (1980).  The value of a class settlement

24  includes not only cash payments, but different forms of monetary benefits as well. *See,*

25  *e.g., Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) (value of class

26  settlement includes full amount of debt forgiveness by defendant for plaintiff class).

27  Separately paid attorneys' fees may also be included in the value of a class

28  settlement. *See Yeagley v. Wells Fargo & Co.*, No. C05-03403 CRB, 2008 WL 171083, at

1   *7 (N.D. Cal. Jan. 18, 2008).  Likewise, the costs of class notice and settlement

2   administration, if paid separately by defendant, may also be included in the value of the

3   settlement.  *See Staton*, 327 F.3d at 974-75 (district court did not abuse its discretion in

4   including defendant's cost of notice in the value of the class settlement); *Mangone v. First*

5   *USA Bank*, 206 F.R.D. 222, 228 (S.D. Ill. 2001) (the value of the class settlement included

6   class counsel's fees and costs, as well as the cost of class notice and settlement

7   administration).

8        Additionally, the value of injunctive relief can be a basis for applying the

9   percentage method of calculating attorneys' fees if it can be "accurately ascertained."

10  *Staton*, 327 F.3d at 974.  When the value of such injunctive relief cannot be "accurately

11  ascertained," it is still a "relevant circumstance" in determining a percentage award. *Id.* at

12  974, citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002).

13       The multi-faceted Settlement in this case consists of the following components:

14       (a)   broadening of the Cartier watch repair network and resultant increases in

15             competition;

16       (b)   a free tool kit valued at $2,000 to each Newly Qualified Watchmaker;

17       (c)   up to $750 in parts discounts to each Newly Qualified Watchmaker;

18       (d)   Automatic and transferable credits totaling $7,511,800 to the Consumer

19             Settlement Sub-Class;[1]

20       (e)   defendant's payment of Settlement Class Counsel's fees and costs, in an

21             amount up to $1,990,000; and

22       (f)   defendant's payment of costs of providing notice and costs of administration

23             of the Settlement, which are expected to total between $280,000 and

24             $320,000.

25  / / /

26  _____

[1]   This is based on the number of notices mailed to members of the Consumer Settlement Sub-Class that

27  were not returned as undeliverable – 75,122 – minus the four opt-outs received from those members.  In
    addition, the Settlement Administration will also distribute credits, upon request and verification, to

28  members of the Consumer Settlement Sub-Class for whom there is no valid address.

1         The value of items (c), (d), (e), and (f) are accurately calculable, and conservatively

2   total $9,791,800. This is an appropriate basis from which to calculate attorneys' fees.

3   However, this is not the only value of the Settlement. The monetary benefits to the

4   Watchmaker Settlement Sub-Class, which are yet to be determined, could easily add

5   hundreds of thousands of dollars in value to the Settlement.[2] Additionally, the opening of

6   the Cartier watch repair network will increase competition and provide many tangible and

7   intangible benefits. In his expert report (manually filed on January 12, 2007), plaintiffs'

8   expert Professor Noll wrote: "reduction in competition can lead to higher prices and

9   reduced quality for consumers as well as loss of business for efficient competitors."

10  Expert Report of Roger G. Noll, p. 20. Professor Noll also explained the following harms

11  that are not usually included in the calculation of damages:

> One example is the harm to consumers who did not buy the product in question because, at the inflated prices arising from the anticompetitive act, these consumers were excluded from the market. Other consumers may not have had their watch repaired because the nearest location at which they could obtain Cartier service was too inconvenient and they did not want to ship their watch to a distant location before receiving an assessment of the repairs that were needed.

*       *       *

> An additional possible source of harm is that a reduction in competition normally leads to a reduction in service quality.

*       *       *

> For watchmakers, a harm that is not included in damages is the loss of a relationship with a customer.

*       *       *

> A final harm from a reduction in competition is that if markets are not competitive, inefficient firms may not survive but thrive, and in the process waste resources.

24  *Id.* at 21-23. The Settlement alleviates these different forms of harm and confers a

25  significant benefit. These benefits further support a finding that the Settlement is valued at

---

[2]   As an example, if 100 watchmakers become Newly Qualified Watchmakers under the Settlement, and they are able to maximize the parts discount, an additional $275,000 in value would be added to the Settlement. If 400 watchmakers become Newly Qualified Watchmakers and maximize the parts discount, $1.1 million in value would be conferred by the Settlement.

1 | no less than $9,791,800.

2 | **2.    As a Percentage of the Settlement Value, the Requested**
3 | **Attorneys' Fees are Fair, Adequate, and Reasonable**

4 | Under the percentage method, the Court awards a percentage of the fund created by

5 | the attorneys' efforts as the reasonable attorneys' fee.[3] *Blum v. Stenson*, 465 U.S. 886, 900

6 | n.16 (1984). The use of a percentage method is desirable because it achieves judicial

7 | economy, encourages early settlement, and provides predictability for the attorneys and

8 | class members. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989).

9 | The percentage method is designed to compensate class counsel "in a manner that rewards

10 | counsel for success and penalize it for failure." *In re Prudential Ins. Co. Am. Sales*

11 | *Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998), citing *In re General*

12 | *Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3rd Cir.

13 | 1995). In this regard, the percentage method is "self-policing," relying "on incentives

14 | rather than costly monitoring." *Activision*, 723 F. Supp. at 1376.

15 | After surveying fees awarded in class settlements between 1996 and 2001, the

16 | Ninth Circuit has held that 25 percent of the settlement value is an appropriate starting

17 | point or benchmark for the analysis of fees. *See Vizcaino*, 290 F.3d at 1048. This

18 | benchmark percentage "should be adjusted, or replaced by a lodestar calculation, when

19 | special circumstances indicate that the percentage recovery would be either too small or

20 | too large in light of the hours devoted to the case or other relevant factors." *Six (6)*

21 | *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

22 | Factors that support a higher percentage include "exceptional results" and "expert handling

23 | of the case." *Vizcaino*, 290 F.3d at 1048, citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

24 |

---

25 | [3]    Although first used in "common fund" cases (*i.e.*, cases where attorneys' fees are paid from the settlement fund), the percentage method has been extended to other types of class settlements as well. *See, e.g., Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("the direct payment of

26 | attorney fees by defendants should not be a barrier to the use of the percentage of the benefit analysis"); *In*

27 | *re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 821 (3rd Cir. 1995) (a percentage method of determining attorneys' fees can be used even where those fees would be paid

28 | separately by defendants because the fee and the settlement "actually come from the same source").

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES,
AND CLASS REPRESENTATIVE INCENTIVE AWARDS / Case No. C05-04525 EMC                    7

1    1370, 1377 (9th Cir. 1993).  The quality of counsel, the benefits obtained for the class, the

2    complexity of the issues, and the risk of nonpayment are also factors to consider.  *See In re*

3    *Oracle Sec. Litig.*, 852 F. Supp. 1437, 1449 (N.D. Cal. 1994).

4        Many courts have awarded attorneys' fees representing one-third of the class

5    recovery in complex antitrust and securities cases.  *See, e.g., In re Medical X-Ray Film*

6    *Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) (approving

7    settlement where class collected 17 percent of damages and awarding class counsel one-

8    third the value of settlement in fees); *In re General Instr. Sec. Litig.*, 209 F. Supp. 2d 423

9    (E.D. Pa. 2001) (awarding class counsel one-third fee from settlement fund that

10   represented 11 percent of the estimated classwide damages); *In re Corel Corp. Inc. Sec.*

11   *Litig.*, 293 F. Supp. 2d 484 (E.D. Pa. 2003) (awarding one-third fee from settlement fund

12   that represented 15 percent of damages).

13        Here, the requested attorneys' fees represent 19 percent of the readily ascertainable

14   value of the settlement.  This is well below the 25 percent benchmark used in this Circuit.

15   Moreover, all of the factors pertinent to the appropriateness of a percentage award support

16   the requested attorneys' fees, and more.

17            **a.**    **Settlement Class Counsel Performed Legal Services With a**

18               **High Level of Skill**

19        This class action required specialized legal knowledge and skills to prosecute.  This

20   case presented difficult legal questions regarding antitrust standing, the elements of a tying

21   claim, and proof of resulting damages.  In addition, it implicated complex questions about

22   class certification, and the proper nature and extent of relief for the thousands of members

23   of the Class.  Defendant was ably represented by three highly-regarded and well-financed

24   firms who challenged Settlement Class Counsel at every opportunity.  The level of skill

25   necessary to obtain this settlement for the Class was high.  The difficulty of prevailing on

26   these novel issues also made this an undesirable case.

27   / / /

28   / / /

b.     **Settlement Class Counsel Were Required to Expend Substantial Time**

The Settlement here was achieved only after substantial motion practice, a year of discovery on the merits, and consultation with experts. Even after the terms of the Settlement were reached, Settlement Class Counsel had to file several disputed motions to effectuate the Settlement and protect the interests of the Settlement Class. Settlement Class Counsel have expended over 3,000 hours of professional time in this case. They carried out their service with skill, perseverance, and diligence. The Settlement could not have been achieved without Settlement Class Counsel's vigorous prosecution and expertise in both class actions and antitrust litigation.

c.     **Settlement Class Counsel Accepted this Case on a Contingency Basis**

Settlement Class Counsel accepted this case on a contingency basis wherein they had no guarantee of compensation. They have worked on this case for over two and a half years, which has precluded other employment that would have provided guaranteed and prompt compensation for their services. In addition, they advanced substantial litigation expenses for the benefit of the Class. This factor supports the requested award of attorneys' fees.

3.     **Compared Against the Lodestar, the Requested Attorneys' Fees are Fair, Adequate, and Reasonable**

The requested attorneys' fees are also fair and reasonable when cross-checked against the lodestar. *See Young v. Polo Retail, LLC*, No. C02-4546, 2007 WL 951821, at *5 (N.D. Cal. Mar. 28, 2007) (the reasonableness of a percentage fee can be determined by cross-checking it "against a rough fee computation under the lodestar method"). The lodestar method requires multiplying the number of hours reasonably expended in the litigation by reasonable hourly rates to determine a reasonable attorneys' fee. *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1182 (N.D. Cal. 2004). This lodestar figure is presumptively reasonable. *Id.*

1   The lodestar figure may be adjusted upward or downward using a "multiplier"

2   based on the following factors first set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d

3   67 (9th Cir. 1975): (1) the time and labor required; (2) the novelty and difficulty of the

4   questions involved; (3) the skill requisite to perform the legal service properly; (4) the

5   preclusion of other employment by the attorney due to acceptance of the case; (5) the

6   customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by

7   the client or the circumstances; (8) the amount involved and the results obtained; (9) the

8   experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11)

9   the nature and length of the professional relationship with the client; and (12) awards in

10   similar cases. *Rothfarb v. Hambrecht*, 641 F. Supp. 71, 74 (N.D. Cal. 1986).

11   Here, Settlement Class Counsel have a combined lodestar of $1,084,079, which was

12   calculated as follows:

13   **Pearson, Simon, Soter, Warshaw & Penny, LLP's Lodestar**

| Name | Rank | Rate[4] | Hours | Total Fees |
|------|------|---------|-------|------------|
| Bruce Simon | Partner | $547.68 | 177.0 | $96,940.00 |
| Clifford Pearson | Partner | $583.95 | 405.3 | $236,675.00 |
| Gary Soter | Partner | $570.66 | 28.8 | $16,435.00 |
| Daniel Warshaw | Partner | $527.46 | 7.1 | $3,745.00 |
| Esther Klisura | Associate | $398.25 | 285.9 | $113,859.00 |
| Ashlei Vargas | Associate | $425.00 | 0.1 | $42.50 |
| Jonathan Adler | Paralegal | $90.00 | 5.4 | $486.00 |
| **SUBTOTAL** | | | **909.6** | **$468,182.50** |

23   / / /

24   / / /

25   / / /

---

[4]   These are weighted blends of hourly rates because the firm's billing rates changed during this litigation. Simon Fee Decl., ¶ 8.  However, all professional time was calculated based on the hourly rate in effect at the time the work was performed. *Id.*

**Cotchett, Pitre, Simon & McCarthy's Lodestar**

| Name | Rank | Rate | Hours | Total Fees |
|------|------|------|-------|-----------|
| Bruce Simon | Partner | $490.00 | 108.6 | $53,214.00 |
| Esther Klisura | Associate | $250.00 | 262.9 | $65,725.00 |
| Douglas Park | Associate | $250.00 | 0.9 | $225.00 |
| Nirav Engineer | Investigator | $175.00 | 2.0 | $350.00 |
| Edwin Boniske | Paralegal | $125.00 | 16.0 | $2,000.00 |
| Jaclyn Verducci | Paralegal | $125.00 | 245.2 | $30,650.00 |
| Ian Sandefer | Law Clerk | $75.00 | 1.2 | $90.00 |
| **SUBTOTAL** | | | **637.6** | **$152,254.00** |

**Meyers, Nave, Riback, Silver & Wilson's Lodestar**

| Name | Rank | Rate | Hours | Total Fees |
|------|------|------|-------|-----------|
| Mara Rosales | Principal | $500.00 | 3.4 | $1,700.00 |
| Geoffrey Spellberg | Of Counsel | $500.00 | 218.5 | $109,250.00 |
| Ruben Duran | Of Counsel | $275.00 | 55.9 | $15,372.50 |
| Reichi Lee | Of Counsel | $300.00 | 28.0 | $8,400.00 |
| Ellin Davtyan | Associate | $375.00 | 8.1 | $3,037.50 |
| Kimberly Drake | Associate | $375.00 | 93.7 | $35,137.50 |
| Justine Hinderliter | Associate | $275.00 | 31.1 | $8,552.50 |
| Kyle La Londe | Associate | $275.00 | 7.5 | $2,062.50 |
| Sara Pasquinelli | Associate | $300.00 | 31.4 | $9,420.00 |
| Dana Zamczyk | Associate | $300.00 | 772.6 | $231,780.00 |
| Keith Aganon | Paralegal | $170.00 | 229.0 | $38,930.00 |
| **SUBTOTAL** | | | **1,479.2** | **$463,642.50** |

/ / /

/ / /

/ / /

1    The requested net fee of $1,884,123.93 is a 1.74 multiplier of the $1,084,079

2  lodestar.  Courts have awarded attorneys' fees constituting larger multipliers in numerous

3  other cases.  *See, e.g., Vizcaino v Microsoft Corp.*, 142 F. Supp. 2d 1299, 1305-06 (W.D.

4  Wash. 2001) (approving multiplier of 3.67); *In re NASDAQ Market-Makers Antitrust*

5  *Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97); *Weiss v.*

6  *Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding 9.3

7  multiplier), aff'd 66 F.3d 314 (3rd Cir. 1995); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185,

8  198 (S.D.N.Y. 1997) (awarding 5.5 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F.

9  Supp. 2d 706, 736 (E.D. Pa. 2001) (a "lodestar multiple in the range of 4.5 to 8.5" is

10  "unquestionably reasonable" under the cross-check approach).  As discussed above, the

11  requested attorneys' fees here represent a 1.74 multiplier and is fair and reasonable given

12  the quality of the representation, the challenges in this case, and the results obtained.

13  **C.    The Objections to the Requested Attorneys' Fees are Without Merit**

14    Six individuals object to the attorneys' fees requested here.  As explained below,

15  none of the objections make any argument that should persuade the Court to deny this

16  motion.

17    Consumers Ronald and Leslie Yoo object based on "principle," asserting that

18  "contingency fees are a cancer on the legal system."  The Yoos' personal views on

19  contingency fee arrangements are no reflection on the reasonableness attorneys' fees in

20  this case.  Moreover, their views are contrary to the public policy favoring the use of class

21  actions to enforce antitrust laws.  *See In re Abbot Laboratories Norvir Anti-Trust Litig.*,

22  No. C04-1511 CW, 2007 WL 1689899, at *4 (N.D. Cal. June 11, 2007).  As the Court is

23  aware, such class actions are, for all practical purposes, impossible without contingency

24  fee arrangements.  Thus, the Yoos' objection should be rejected.

25    Consumer John K. Crossman states that in the event the Settlement is rejected, the

26  Court "should also deny the attorney's fees to the plaintiff's lawyers, since they would

27  have conferred no benefit upon the class members."  *See* Docket #209.  Impliedly, Mr.

28  Crossman does not object to the award of attorneys' fees if the Settlement is approved.  As

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES,
AND CLASS REPRESENTATIVE INCENTIVE AWARDS / Case No. C05-04525 EMC          12

1    discussed in the concurrently filed Joint Motion for Final Approval of Class Settlement,

2    the proposed Settlement meets the fair, adequate, and reasonable standard for approval by

3    the Court.  Consequently, Settlement Class Counsel should be awarded attorneys' fees as

4    compensation for their efforts in bringing about that Settlement.

5         Consumer Larry Erhardt objects that the fees are excessive compared to the $100

6    credit that he will receive.  *See* Docket #210.  The reasonableness of the requested

7    attorneys' fees must be viewed in light of the total settlement value rather than the benefit

8    to any one individual.  Here, the total value of the Settlement is well over $10 million.

9    When viewed against that value, as the Court must, the requested fees are not excessive.

10   Erhardt's misinformed objection should be rejected.

11        Consumer Mary Meyer objects in cursory fashion that, "Under the unique and

12   particular circumstances of this case, attorneys' fees and expenses are excessive under

13   either a percentage of recovery method or under a lodestar analysis."  *See* Docket #220,

14   3:19-20.  Despite being represented by counsel, Meyer does not provide any discussion or

15   factual basis to support the argument that the requested fees are excessive.  As set forth

16   above, the requested attorneys' fees are below the benchmark percentage awarded in the

17   Ninth Circuit and are also reasonable under the lodestar with multiplier approach.  Thus,

18   Meyer's conclusory objection should be rejected.

19        Plaintiff Andre Fleury objects that "[g]iven the lack of substantive relief, at least

20   with respect to the watchmaker settlement sub-class, achieved by class counsel, the

21   attorney fee request is excessive."  *See* Fleury Objection, 6:6-7 (Docket #224).

22   Preliminary, Settlement Class Counsel disagree with the characterization of the Settlement

23   as providing no substantive relief to the Watchmaker Settlement Sub-Class.  As set forth

24   above and in the concurrently filed Joint Motion for Final Approval of Class Settlement,

25   there is ample grounds to find that the proposed Settlement is a fair and reasonable

26   resolution of complex claims that are difficult to establish.  The Settlement provides up to

27   $2,750 in tangible benefits to Newly Qualified Watchmakers and broadens the Cartier

28   watch repair network, which as described by Professor Noll, alleviates a variety of harms.

1    Moreover, plaintiff Fleury does not dispute the benefits of the Settlement to the Consumer

2    Settlement Sub-Class.  That portion of the Settlement, valued at over $7.5 million, is itself

3    a valuable enough recovery to justify the attorneys' fees requested here.  Thus, plaintiff

4    Fleury's objection should be rejected.

5         Finally, it is significant that only six objections to the attorneys' fees have been

6    received despite notice of Settlement Class Counsel's intention to file this motion being

7    provided to over 75,000 Settlement Class members and the 51 Attorneys General.  This is

8    a "remarkably small" number that further supports the reasonableness of the fees sought.

9    *See In re Heritage Bond Litig.*, No. CV02-9221 DT (RCX), 2005 WL 1594389, at *16

10   (C.D. Cal. June 10, 2005) ("the lack of significant objections to the requested fees justifies

11   an award of one-third of the Settlement Fund").  Therefore, the requested attorneys' fees

12   should be granted.

13   **D.    Class Counsel Should be Granted Reimbursement of Litigation Costs**

14        Attorneys in a certified class action case may be reimbursed for reasonable out-of-

15   pocket expenses.  Fed. R. Civ. P. 23(h).  In common fund cases, Ninth Circuit courts

16   frequently award litigation costs and expenses in addition to a percentage award of

17   attorneys' fees.  *See, e.g., In re Businessland Sec. Litig.*, No. C90-20476 RFP, 1991 WL

18   427887, at *3 (N.D. Cal. June 14, 1991) (granting fee award of 30 percent of net

19   settlement fund plus expenses of $90,574.78, citing several cases from this and other

20   circuits that held similarly).

21        Here, Settlement Class Counsel seek reimbursement for $105,876.07 in litigation

22   expenses.  This request should be granted because all of the expenses were reasonably

23   incurred and necessary given the complex nature, and nationwide scope, of the case.  For

24   example, the docket in this case consists of 225 entries, plaintiffs received over one million

25   pages of documents from defendant, three depositions were taken in New York

26   necessitating cross-country travel, and plaintiffs retained one of the preeminent economists

27   in the country as their expert.  The breakdown of these costs are as follows:

28   / / /

NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES,
AND CLASS REPRESENTATIVE INCENTIVE AWARDS / Case No. C05-04525 EMC          14

| | | |
|---|---|---|
| 1 | **Pearson, Simon, Soter, Warshaw & Penny, LLP's Expenses** | |
| 2 | Mediation fee | $3,695.70 |
| 3 | Long distance telephone charges | $29.10 |
| 4 | Photocopy charges | $6,554.90 |
| 5 | Parking | $170.00 |
| 6 | Travel expenses | $3,383.80 |
| 7 | Facsimile / document scan costs | $38.37 |
| 8 | Conference call fees | $43.50 |
| 9 | Overnight mail charges | $364.69 |
| 10 | Courier fee | $135.80 |
| 11 | Electronic document production | $18,514.83 |
| 12 | Expert fees | $30,550.00 |
| 13 | Online legal research | $409.95 |
| 14 | Court reporters fee | $1,096.42 |
| 15 | Postage | $30.43 |
| 16 | **SUBTOTAL** | **$65,017.49** |
| 17 | **Cotchett, Pitre, Simon & McCarthy's Expenses** | |
| 18 | Attorney Service | $597.50 |
| 19 | Depositions | $6,520.15 |
| 20 | Federal Express, California Overnight | $245.43 |
| 21 | Hearing Transcript | $283.80 |
| 22 | Lexis/Nexis | $1,169.16 |
| 23 | In-House Photocopies | $4,151.80 |
| 24 | Postage | $83.73 |
| 25 | Service of Process | $125.00 |
| 26 | Telephone/Fax | $183.72 |
| 27 | Travel | $6,143.80 |
| 28 | **SUBTOTAL** | **$19,604.09** |

1  **Meyers, Nave, Riback, Silver & Wilson's Expenses**

2  Legal Research                                            $840.03

3  Transcription                                             $198.00

4  Litigation Copies                                       $9,734.58

5  Delivery services                                       $1,354.06

6  Deposition Charges                                        $315.00

7  Court Reporters                                         $1,407.90

8  Travel Costs                                            $5,212.36

9  Mediation Fees                                          $1,750.00

10  In-House Photocopies                                     $439.56

11  **SUBTOTAL**                                           **$21,254.49**

12

13  E.      **Incentive Awards to Class Representatives Hart and Mertaban Should be**

14          **Approved**

15          The Court has discretion to grant incentive awards to class representatives.

16  *Fitzgerald v. City of Los Angeles*, No. CV03 1876 NM RZX, 2003 WL 25471424, at *2

17  (C.D. Cal. Dec. 8, 2003).  Incentive awards are intended to compensate class

18  representative "for the services they provided and the risks they incurred during the course

19  of the class action litigation."  *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 WL

20  34089697, at *12 (W.D. Wash. Mar. 26, 2001).  In making incentive awards, courts

21  consider the following factors:

22          (1) the risk to the class representative in commencing suit, both financial
            and otherwise; (2) the notoriety and personal difficulties encountered by
23          the class representative; (3) the amount of time and effort spent by the
            class representative; (4) the duration of the litigation and; (5) the personal
24          benefit (or lack thereof) enjoyed by the class representative as a result of
            the litigation.
25
    *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995)
26
    (awarding $50,000 to class representative who actively participated in a litigation,
27
    provided key testimony at trial, and did not receive great personal benefit from the
28

1    common fund).

2       Class Representatives Hart and Mertaban should be awarded incentive awards to

3    compensate them for the time and effort in bringing about the Settlement here. Ms. Hart

4    has been involved in this case from the very beginning. Spellberg Fee Decl., ¶ 20. In

5    bringing this action, she undertook a financial risk that she could be assessed personally

6    for costs. *Id*. She has responded to written discovery and provided deposition testimony

7    in support of the class claims. *Id*. She has also spent numerous hours to keep apprised

8    about this litigation and to attend the mediation. *Id*. These circumstances satisfy the *Van*

9    *Vranken* criteria for an incentive award.

10       Unlike Ms. Hart, Mr. Mertaban became involved later in the case. Simon Fee

11    Decl., ¶ 11. However, he too should be granted an incentive award. Mr. Mertaban agreed

12    to undertake not only the financial risk of serving as a Class Representative, but he

13    exposed himself to the risk of negative comments by those who oppose the Settlement. *Id*.

14    As the Court is aware, Mr. Mertaban intervened in this case at a critical point in the

15    litigation, and his involvement was instrumental in the Settlement being effectuated. He

16    has participated in this case with no guarantee of personal benefit. *Id*. Like other members

17    of the Watchmaker Settlement Sub-Class, Mr. Mertaban will apply to Richemont for

18    approval under the watchmaker evaluation process. *Id*. Accordingly, these requested

19    incentive awards should be granted.

20                  **V. CONCLUSION**

21       For the foregoing reasons, plaintiffs Hart, Mertaban, Warner, and Cleves, together

22    with Settlement Class Counsel, respectfully request that the Court award attorneys' fees,

23    reimbursement of litigation expenses, and class representative incentive awards in the

24    amounts requested.

25    / / /

26    / / /

27    / / /

28    / / /

1   Dated:  April 2, 2008                    Respectfully submitted,

2
                                        By:    /s/ Bruce L. Simon
3                                            PEARSON, SIMON, SOTER, WARSHAW &
                                             PENNY, LLP
4
                                             MEYERS NAVE RIBACK SILVER &
5                                            WILSON

6                                            *Settlement Class Counsel and Counsel for
                                             Plaintiffs Liz Hart, Mike Mertaban, Dennis
7                                            Warner, and Charles Cleves*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28