UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE FLEURY, *et al.*, | No. C-05-4525 EMC |
| Plaintiffs, | **ORDER GRANTING IN PART AND DEFERRING IN PART SETTLING PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, LITIGATION EXPENSES, AND INCENTIVE AWARDS** |
| v. | |
| RICHEMONT NORTH AMERICA, INC., | |
| Defendant. | |
| _____/ | **(Docket No. 231)** |

Currently pending before the Court is the Settling Plaintiffs' motion for attorney's fees, litigation expenses, and class representative incentive awards. Having considered the motion, all papers that are related thereto (including supplemental briefing and the objections made by members of the consumer and watchmaker subclasses), and the argument of counsel, the Court hereby **GRANTS** the motion in part and **DEFERS** the motion in part.

## I. DISCUSSION

On July 3, 2008, the Court issued an order granting the Settling Parties' joint motion for final approval of the class settlement. *See* Docket No. 278 (order). Having approved of the class settlement, the Court must now turn to the issue of attorney's fees.

A. <u>Authority to Award Fees and Costs</u>

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h). In the instant case, the Settling Parties have made an agreement with respect to fees and costs. That is, under the settlement,

> Settlement Class Counsel may apply to the Court for an award of attorneys' fees in an amount not to exceed $2,000,000, inclusive of all costs and inclusive of a $5,000 special award for each of Plaintiffs [Liz] Hart and [Mike] Mertaban. Defendant agrees not to contest such application and agrees to pay fees and expenses up to the $2,000,000 amount as awarded by the Court.

Docket No. 278 (Ex. A) (Amended Stipulation of Settlement ¶ 5.1). In light of the Settling Parties' agreement, the main question for the Court is what constitutes a reasonable attorney's fee.[1] *See Wing v. Asarco, Inc.*, 114 F.3d 986, 988 (9th Cir. 1997) (noting that the parties' settlement agreement provided for an award of attorney's fees which did not limit the district court's discretion in determining the fee). "[Richemont's] agreement to pay class counsel's fees in addition to the relief provided to the class does not detract from the Court's obligation to carefully scrutinize the fee award" to ensure that it is reasonable. *Yeagley v. Wells Fargo & Co.*, No. No. C 05-03403 CRB, 2008 U.S. Dist. LEXIS 5040, at *16 (N.D. Cal. Jan. 18, 2008). *See also* Fed. R. Civ. P. 23(h), 2003 advisory committee notes (stating that, "[i]n a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper" and that, "[e]ven in the absence of objections, the court bears this responsibility"; also noting that "[t]he agreement by a settling party not to oppose a fee application up to a certain amount . . . is worthy of consideration, but the court remains responsible to determine a reasonable fee").

B.   Attorney's Fees

   1.   Percentage Method v. Lodestar Method

The Ninth Circuit "has affirmed the use of two separate methods for determining attorneys fees, depending on the case," *i.e.*, the percentage method and the lodestar method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). *But see Wing*, 114 F.3d at 990 (stating that, by approving the lodestar and percentage methods used by the district court, the Ninth Circuit did "not

---

[1] Members of the consumer and watchmakers subclasses were given notice of the motion for attorney's fees, costs, and incentive awards as part of the notice of proposed settlement. *See* Fed. R. Civ. P. 23(h)(1) ("Notice of the motion [for attorney's fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."); *id.*, 2003 advisory committee notes ("In cases in which settlement approval is contemplated under Rule 23(e), notice of class counsel's fee motion should be combined with notice of the proposed settlement, and the provision regarding notice to the class is parallel to the requirements for notice under Rule 23(e).").

suggest that these are the only measures of reasonableness a district court might use in a contractual fee-shifting arrangement"). In common fund cases, the Ninth Circuit has expressly stated that a district court has discretion as to which method to use. *See In re Washington Public Power Supply System Secs. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994). Arguably, the instant case does not involve a common fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003) (noting that, "[u]nder regular common fund procedure, the parties settle for the total amount of the common fund and shift the fund to the court's supervision" and that thereafter counsel for plaintiffs "apply to the court for a fee award from the fund"); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 852 (5th Cir. 1998) (concluding that the case was not a traditional common fund case because no money was paid into escrow or any other account -- *i.e.*, no fund was established at all -- and the settlement agreement did not establish or estimate the defendant's total liability; adding that the settlement under consideration was more like a settlement giving class members coupons or certificates where the true value of the award was less than face value). Nevertheless, the Settling Plaintiffs, both in their motion as well as at the hearing, concede that this Court has the discretion to calculate attorney's fees based on either the percentage method or the lodestar method. *See* Docket No. 231 (Mot. at 4). No party or class member has argued otherwise. *See Hanlon*, 150 F.3d at 1029; *see also Perez v. Asurion Corp.*, No. 06-20734-CIV-SEITZ/MCALILEY, 2007 U.S. Dist. LEXIS 66931, at *4-5 (S.D. Fla. Aug. 8, 2007) (stating that a court has discretion to award fees based on the lodestar method under the Class Action Fairness Act).

In their opening brief, the Settling Plaintiffs favored using the percentage method in the instant case. *See* Docket No. 231 (Mot. at 4). Under the percentage method, the value of the settlement must first be assessed, and then a percentage of that value is awarded as attorney's fees. *See Staton*, 327 F.3d at 968 (noting that, "under the percentage method, 'the court simply awards the attorneys a percentage of the [common] fund'"). In the instant case, the Settling Plaintiffs claim that the settlement is worth at least $9,791,800, *see* Docket No. 231 (Mot. at 6); this figure is largely based upon the value of the $100 credits issued to members of the consumer subclass. *See id.* (Mot. at 5) (asserting that credits totaling $7,511,800 would be issued to the consumer subclass). These fees requested by the Settling Plaintiffs represent less than 20% of the claimed valuation.

After reviewing the opening brief, the Court issued an order asking whether it should delay ruling on the fee motion so that it could assess the rate of redemption of consumer credits that were redeemed as well as the number of watchmakers who applied to become part of the authorized Cartier network and were deemed qualified by Richemont. *See* Docket No. 237 (order, filed on 4/11/2008, at 2-3). The Court noted that, under the Class Action Fairness Act of 2005 ("CAFA"), "[i]f a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a); *see also* 109 S. Rpt. 14 (2005) (stating that, "in class action settlements in which it is proposed that an attorney fee award be based solely on the purported value of the coupons awarded to class members, the fee award should be based on the demonstrated value of coupons actually redeemed by the class members"; "[t]hus, if a settlement agreement promises the issuance of $5 million in coupons to the putative class members, but only 1/5 of potential class members actually redeem the coupons at issue, then the lawyer's contingency fee should be based on a recovery of $1 million -- not a recovery of $5 million").

In response, the Settling Plaintiffs argued that the above provision in CAFA is not applicable to the instant case because it is not a coupon settlement. *See* Docket No. 246 (Sett. Pls.' Supp. Br. at 5). However, the $100 credits available to consumers (which the Settling Plaintiffs claim are worth more than $7.5 million total and which make up the bulk of the claimed value of the settlement) could be characterized as a coupons. While CAFA does not expressly define what a coupon is, the legislative history suggests that a coupon is a *discount* on another product or service offered by the defendant in the lawsuit. *See generally* 109 S. Rpt. 14 (2005). The Settling Plaintiffs suggest that the $100 credit is not a coupon because, as the Seventh Circuit has suggested, a noncash benefit cannot be a coupon if it allows a consumer to buy an *entire* product. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) ("We recognize that the pre-paid envelopes are not identical to coupons, since they represent an entire product, not just a discount on a proposed purchase."). The legislative history, however, suggests that even such a noncash benefit could be a coupon. *See* 109 S. Rpt. 14 (2005) (suggesting that the following were coupon settlements: (1) "a

4

recent class action where consumers alleged that a company was selling cribs that were unsafe for use by infants, [and] the class members received *either* a crib repair kit or a coupon for $55 which could be used toward the future purchase of a Dorel Juvenile Group Product"); (2) "[a]nother recent suit involv[ing] allegations that Poland Spring water does not really come from a spring deep in the woods of Maine," and the class members received "discounts *or* free water . . . over five years and contributions of $2.75 million to charities"; and (3) a class action where "[a] manufacturer offered consumers who bought a dozen Pinnacle golf balls free golf gloves" but failed to do so, and the class members received three free golf balls) (emphasis added). Moreover, even if the Court were to apply *Synfuel Technologies*, the reality is that most Cartier products cost significantly more than $100 (or even $200 as the $100 credits may be aggregated up to a maximum of two credits). In all likelihood, the $100 credit will often be employed as a discount to purchase items exceeding the value of the credit, rather than be used to purchase a $100 or $200 item.

In any event, even if the instant case did not involve any coupons such that CAFA would not apply, courts have still found the above CAFA provision instructive when the benefit to the class is coupon-like. *See, e.g.*, *Yeagley*, 2008 U.S. Dist. LEXIS 5040, at *23-28 (stating that the case, which involved Fair Credit Reporting Act claims, arguably was not a coupon case but that nevertheless CAFA was still instructive). In addition, the advisory committee notes for Rule 23(h) expressly recognize that, "[i]n some cases, it may be appropriate to defer some portion of the fee award until actual payouts to class members are known." Fed. R. Civ. P. 23(h), 2003 advisory committee notes.

In the instant case, the Court is not inclined to use the percentage method without at least some knowledge (even if limited) about the number of consumer credits that have been redeemed and the number of watchmakers who have applied to become part of the authorized Cartier network and been deemed qualified. The Settling Plaintiffs' fee request is based largely on the value of the $100 credits sent to members of the consumer subclass, and their assessment of the value of the settlement assumes that 100% of the credits will be used. Given the cost of most Cartier products, and the limited merchandise available for $100 to $200, that assumption may not be a fair one. Until the Court has a sense of how many credits are actually redeemed, it cannot say that the settlement

does in fact have a value of close to $10 million.  Accordingly, the Court favors using the lodestar method in lieu of the percentage method.

The Court therefore applies the lodestar method.  Its decision to do so is not inconsistent with CAFA.  CAFA allows for use of the lodestar method.  *See* 28 U.S.C. § 1712(b)(1) ("If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action."); *see also* 109 S. Rpt. 14 (2005) ("In some cases, the proponents of a class settlement involving coupons may decline to propose that attorney's fees be based on the value of the coupon-based relief provided by the settlement.  Instead, the settlement proponents may propose that counsel fees be based upon the amount of time class counsel reasonably expended working on the action."); *Perez v. Asurion Corp.*, 2007 U.S. Dist. LEXIS 66931, at *4-5 (noting that, under § 1712(b)(1), a court has discretion to award attorney's fees under the lodestar method).

Moreover, use of the percentage method is not unfair to the Settling Plaintiffs who, in supplemental briefing, conceded such.  *See* Docket No. 246 (Settling Pls.' Supp. Br. at 6-7) (arguing that, even under the lodestar method, their fee request -- which constituted the lodestar with a 1.74 multiplier -- was reasonable).  At the hearing held on July 9, 2008, the Settling Plaintiffs confirmed that they were amenable to use of the lodestar method.  When the Court expressed concern that it should delay ruling even under the lodestar method, Settling Plaintiffs suggested that the Court could award the lodestar now and simply defer ruling on whether the Settling Plaintiffs were entitled to a multiplier based on the results obtained (*i.e.*, the number of consumer credits redeemed and the number of watchmaker applicants ultimately deemed qualified by Richemont).  The Court adopts this proposal of the Settling Plaintiffs -- *i.e.*, it shall determine now what fees are warranted under the lodestar method but defer the issue of whether any enhancement by way of a multiplier is appropriate until after it has a sense of the actual results obtained by the settlement.  The Court will order that supplemental briefing be filed and a further hearing be held after six months pursuant to the schedule set forth below.

2.   Lodestar Method

Under the lodestar method, a reasonable attorney's fee is determined by the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court held that the hourly rates to be employed in calculating reasonable fees are determined by the "prevailing market rates in the relevant community, regardless of whether the plaintiff is represented by private or nonprofit counsel." *Id.* at 895. As to the number of hours reasonably expended, a fee applicant "should make a good-faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

In most cases, the lodestar figure is presumptively a reasonable fee award, although a court may, if circumstances warrant, adjust the lodestar upwards or downwards to account for other factors -- as enumerated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) -- which are not subsumed within the lodestar. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988) (same); *see also Woods v. Sunn*, 865 F.2d 982, 991 (9th Cir. 1988) (noting that many factors previously identified by courts as probative on the issue of reasonableness of a fee award are now subsumed within the initial calculation of the lodestar amount). In *Cunningham*, the Ninth Circuit emphasized that the *Kerr* factors subsumed in the lodestar "may not act as independent bases for adjustments of the lodestar. . . . [A]ny reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion."[2] *Cunningham*, 879 F.2d at 487. The Ninth Circuit added that "the 'results obtained' is among the factors that are ordinarily subsumed in the lodestar," *id.* at 488, such that,

> in ordinary cases, a plaintiff's "degree of success" or the "results obtained" should be adequately accounted for in the lodestar. Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled. Adjustments to the lodestar based on "results obtained" must

---

[2] "[The] *Kerr* factors that are not subsumed may support adjustments in rare cases, provided the district court states which factors it is relying on and explains its reasoning." *Cunningham*, 879 F.2d at 487.

7

be supported by evidence in the record demonstrating why such a
deviation from the lodestar is appropriate.

*Id.* at 488.  In short, "[i]n exceptional cases, such deviation may be proper, but the court must explain why the results of the lawsuit are not adequately factored into the lodestar."[3]  *Id.* at 489.

In the instant case, the Court must evaluate the lodestar for each of the three law firms that represented the Settling Plaintiffs: (1) the Cotchett law firm; (2) the Pearson law firm; and (3) the Meyers law firm.  According to the Settling Plaintiffs, the Cotchett law firm spent 637.6 hours on the case, for a total of $152,254 in attorney's fees,[4] *see* Docket No. 232 (Simon Decl. ¶ 7 & Ex. A); the Pearson law firm spent 1,147.6 hours on the case, for a total of $615,275 in attorney's fees, *see* Docket No. 279 (Supp. Simon Decl. ¶ 2 & Ex. A); and the Meyers law firm spent 1,507.30 hours on the case, for a total of $475,392.50.  *See id.* (Supp. Simon Decl., Ex. B).  These fees total $1,242,921.50, representing 3,292.5 hours of time.  *See id.* (Supp. Simon Decl. ¶ 5).  The Settling Plaintiffs have provided their billing records to support these claimed fees.  *See* Docket Nos. 284-85.  The billing records reflect that the hours were incurred for the period September 2005 through July 2008.

Having reviewed the billing records, the Court finds that the hours incurred were reasonable.  While the hours are substantial, they were spread out over a period of almost three years, and, during that time, counsel for the Settling Plaintiffs performed an extensive amount of work, which included prelitigation investigation and research, preparation of oppositions to two motions to dismiss, the review of approximately 150 boxes of paper documents and over one million pages of electronic

---

[3] According to the Ninth Circuit, other "subsumed factors presumably taken into account in either the reasonable hours component or the reasonable rate component of the lodestar calculation" include (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the contingent nature of the fee agreement. *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996) (internal quotation marks omitted); *see also Clark v. Los Angeles*, 803 F.2d 987, 991 n.3 (9th Cir. 1986) (noting that, "[a]mong the factors that the [Supreme] Court held [in *Blum*] subsumed within the initial calculation are the novelty and complexity of the issues, the special skill and experience of counsel, the quality of the representation, and the results obtained") (internal quotation marks omitted; citing *Blum*, 465 U.S. at 898-900).

[4] The billing records for the Cotchett firm actually reflect a total of 650.1 hours. *See* Docket Nos. 284 (Ex. A).  However, 7.0 of the 650.1 hours should have been attributed to a different case, *see id.* (entry dated 9/27/2006), leaving only 643.1 hours in the instant case.  In any event, in their motion, the Settling Plaintiffs ask to be compensated for only 637.6 hours of time.

documents, preparation for and attendance at multiple depositions, preparation for and attendance at multiple mediations (both private and Court-sponsored), the drafting of a motion for class certification (even though ultimately never filed), the preparation of an expert report for class certification, the preparation of the motion for preliminary approval and the motion for final approval, the preparation of the fee motion, and the preparation of supplemental briefs in response to Court orders. In addition the above, counsel for the Settling Plaintiffs spent a not insignificant amount of time working to respond to problems created by Andre Fleury. *See generally* Docket No. 232 (Simon Decl. ¶ 2) (discussing tasks performed).

The Court also finds that the hourly rates for the attorneys and legal staff members who worked on the case were reasonable as they are within the range of prevailing market rates in the San Francisco Bay Area and reflect the experience and skill of counsel.

Because both the hours incurred and the hourly rates are reasonable, the Court awards the lodestar requested by the Settling Plaintiffs.

In so doing, the Court has taken account objections that were made to the fee request but none are availing. For example, Andre Fleury has suggested that any significant fee award would be excessive because the watchmaker subclass at least received no real benefit from the settlement. *See* Docket No. 224 (Andre Fleury's Obj. at 6). Likewise, Larry Erhardt has argued that any significant fee award would be excessive since a consumer is entitled to only a $100 credit for each qualifying repair service. *See* Docket No. 210 (Larry Erhardt Obj. at 1). However, the Court has approved the settlement, both with respect to the watchmaker and consumer subclasses, as fair, adequate, and reasonable, and neither Andre Fleury nor Larry Erhardt has made a showing that the hours spent by counsel, or the hourly rates for counsel's services, are excessive. Moreover, objectors have not demonstrated why the presumption that "results obtained" are subsumed in the lodestar should not apply here.

C.  Costs

In addition to attorney's fees, the Settling Plaintiffs also ask that they be awarded their litigation costs. As noted above, *see* Part I.A, *supra*, Rule 23(h) provides that a court may award nontaxable costs that are authorized by the parties' agreement and the Settling Parties' settlement

1  agreement does in fact provide for cost-shifting. *See* Docket No. 278 (Ex. A) (Amended Stipulation
2  of Settlement ¶ 5.1) ("Settlement Class Counsel may apply to the Court for an award of attorneys'
3  fees in an amount not to exceed $2,000,000, inclusive of *all costs* and inclusive of a $5,000 special
4  award for each of Plaintiffs [Liz] Hart and [Mike] Mertaban. Defendant agrees not to contest such
5  application and agrees to pay fees and *expenses* up to the $2,000,0000 amount as awarded by the
6  Court."). The Settling Plaintiffs seek $19,604.09 in costs incurred by the Cotchett firm, *see* Docket
7  No. 232 (Simon Decl. ¶ 9 & Ex. C); $68,625.75 in costs incurred by the Pearson firm,[5] *see* Docket
8  No. 279 (Supp. Simon Decl. ¶ 3 & Ex. A); and $21,254.49 in costs incurred by the Meyers firm. *See*
9  Docket No. 233 (Spellberg Decl. ¶ 19 & Ex. B). It does not appear that any class member has
10 objected to the requests for costs specifically (as opposed to attorney's fees).
11     The Court has reviewed the categories of costs and their amounts and finds them reasonable.
12 Accordingly, the costs requested by the Settling Plaintiffs -- which total $109,484.33 -- shall be
13 awarded.[6]
14 D.    Incentive Awards
15     Finally, the Settling Plaintiffs ask that the Court grant incentive awards -- each in the amount
16 of $5,000 -- to Liz Hart, the representative for the consumer subclass, and to Mike Mertaban, one of
17 the representatives for the watchmaker subclass. As with fees and costs, the incentive awards are
18 covered by the Settling Parties' settlement agreement. *See* Docket No. 278 (Ex. A) (Amended
19 Stipulation of Settlement ¶ 5.1). It does not appear that there is any specific objection to an
20 incentive award for either Ms. Hart or Mr. Mertaban.
21     The Ninth Circuit has stated that

---

[5] The bulk of this cost comes from the expert fee. As noted above, the Settling Plaintiffs are not asking for costs pursuant to statute. *See West Va. Univ. Hospitals, Inc. v. Casey*, 499 U.S. 83, 95 (1991), the Supreme Court noted that "[a]s of 1976, four Circuits (six Circuits, if one includes summary affirmances of district court judgments) had held that [15 U.S.C. § 15] did not permit a shift of expert witness fees."). Instead, they are asking for costs pursuant to the terms of the settlement agreement. Richemont has not argued that the expert fee sought does not fall within the "costs" and "expenses" contemplated by the Settling Parties in their settlement agreement. Both parties agree that a settlement agreement authorizes expert fees as part of recoverable costs. Such fees are thus awardable consistent with Rule 23(h).

[6] In his supplemental declaration, Bruce Simon states that the costs total $109,222.83. *See* Docket No. 279 (Supp. Simon Decl. ¶ 5). This appears to be a mathematical error.

10

> named plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments. The district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."

*Staton*, 327 F.3d at 977; *see also Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (stating that a district court has discretion as to whether an incentive award should be made and stating that the following criteria may be considered: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation).

An incentive award is appropriate as to Ms. Hart as she has been involved in this case since its inception almost three years ago, and she has made contributions to the case, most notably, by responding to written discovery, submitting to a deposition, and attending the mediation session with Judge Infante. *See* Docket No. 232 (Simon Decl. ¶ 11); Docket No. 233 (Spellberg Decl. ¶ 20). An award in the amount of $5,000 is fair, particularly given the length of the litigation.

Likewise, an incentive award is appropriate as to Mr. Mertaban because, although he entered the litigation fairly late in the proceedings, he exposed himself to the risk of criticism from fellow watchmakers whom Andre Fleury was rallying in the effort to block to settlement. Although his participation in the case appears limited, a $5,000 incentive award is modest and therefore approved.

## II. CONCLUSION

For the foregoing reasons, the Court grants in part the Settling Plaintiffs' motion for fees, costs, and incentive awards. The Court awards the Settling Plaintiffs $1,242,921.50 in attorney's fees and $109,484.33 in costs. In addition, the Court awards Ms. Hart $5,000 as an incentive payment, and Mr. Mertaban $5,000 as an incentive payment. The Court defers ruling as to whether the Settling Plaintiffs are entitled to additional attorney's fees -- as a multiplier to the lodestar -- based on the results obtained. The Settling Parties shall file by March 4, 2009, a supplemental brief

1 reporting results obtained in the Settlement and their views regarding Settling Plaintiffs' entitlement,
2 if any, to additional fees. Any opposition thereto, including by Andre Fleury, shall be filed by
3 March 18, 2009. A hearing will be held on April 1, 2009 at 10:30 a.m.
4     This order disposes of Docket No. 231.

6     IT IS SO ORDERED.

8 Dated: August 6, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

12