**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDRE FLEURY, *et al.*,

      Plaintiffs,

    v.

RICHEMONT NORTH AMERICA, INC.,

      Defendant.

_____/

No. C-05-4525 EMC

**ORDER GRANTING SETTLEMENT
CLASS COUNSEL'S MOTION FOR
ADDITIONAL ATTORNEY'S FEES**

**(Docket No. 347)**

      Currently pending before the Court is Settlement Class Counsel's motion for additional attorney's fees and litigation expenses.  Only one opposition has been filed – namely, a letter by Andre Fleury, a named Plaintiff in the case and member of the watchmaker subclass who ultimately opted out of the settlement.  Having considered the motion and accompanying submissions, the oral argument of counsel, and all other evidence of record, the Court hereby **GRANTS** the motion.

## I.    FACTUAL & PROCEDURAL BACKGROUND

      On July 3, 2008, the Court granted final approval to the settlement of this class action.  *See* Docket No. 278 (order).  Thereafter, on August 6, 2008, the Court ruled on Settlement Class Counsel's motion for attorney's fees, litigation expenses, and incentive awards.  *See* Docket No. 295 (order).  In the order, the Court granted the motion in part and deferred the motion in part.

      The Court granted the motion to the extent that it awarded Settlement Class Counsel the lodestar for the period September 29, 2005, to July 9, 2008 (*i.e.*, $1,242,921.50).  *See* Docket No. 284, Exs. A-B (redacted billing records).  The Court also awarded Settlement Class Counsel

litigation expenses for that period ($109,484.33), plus incentive awards for the class representatives ($10,000).

The Court deferred ruling as to whether Settlement Class Counsel was "entitled to additional attorney's fees – as a multiplier to the lodestar – based on the results obtained." Docket No. 295 (Order at 11). The Court instructed Settlement Class Counsel to file a supplemental brief by March 4, 2009, reporting the results obtained and its views regarding its entitlement to additional fees. Currently pending is Settlement Class Counsel's motion for additional fees and expenses.

## II.   DISCUSSION

Because the settlement agreement put a cap on fees, expenses, and incentive awards – up to $2,000,000 – the most that Settlement Class Counsel may ask for is $637,594.17.[1] *See* Mot. at 2. In its motion, Settlement Class Counsel does not argue that it is entitled to that sum because of the results obtained. Had Counsel done so, the argument would not be convincing. The preliminary results on redemption response rates of both the consumer and watchmaker subclasses is relatively meager.[2]

Instead, Counsel asserts that it is entitled to an additional $199,597.50 in fees and $2,371.57 in expenses based on additional work that it performed after July 2008.[3] Counsel then contends that it is entitled to the remaining $435,625.10[4] based on "the difficulty of the issues presented, the

---

[1] $2,000,000 – $1,242,921.50 – $109,484.33 – $10,000 = $637,594.17.

[2] Out of 75,179 credits that were mailed to members of the consumer subclass on December 18, 2008, only 1,769 were redeemed as of February 28, 2009. *See* Mot. at 1 (pointing out that the credits do not expire until December 12, 2010 – *i.e.*, for almost another two years). At the hearing, Settlement Class Counsel provided updated information – *i.e.*, that, as of April 1, 2009, the total number of credits redeemed was 2,221.

For the watchmaker subclass, only 91 watchmakers have asked for an application to become a qualified watchmaker and, as of March 4, 2009, only eight applications were actually been sent in. *See* Mot. at 4 (noting that applications may be submitted until June 12, 2009 – *i.e.*, for another four months). At the hearing, Settlement Class Counsel provided updated information – *i.e.*, that, as of April 1, 2009, the total number of applications sent in was nine. Apparently, seven of the applications were preliminarily rejected, leaving only two still under consideration. Defense counsel stated that one of the applications was rejected because the applicant was not a member of the class.

[3] With the exception of a few hours, the additional work was all performed by lawyers and legal staff of the Pearson Simon firm.

[4] $637.594.17 – $199,597.50 – $2,371.57 = $435,625.10.

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1  challenges presented in the case, the protracted and contentious history of this litigation, and the

2  contingent nature of the Settlement Class Counsel's engagement." Mot. at 6. Counsel suggests that

3  another factor to consider is the fact that it "will likely continue to communicate with Class

4  members and work with the Settlement Administrator through December 2010 – the end of the

5  redemption period for the consumer credits." Mot. at 3. *But see* Mot. at 4 (pointing out that, for the

6  watchmaker subclass, applications to become qualified watchmakers are due by June 12, 2009 – *i.e.*,

7  in approximately four months).

8      As indicated above, the Court previously chose to defer the issue of additional fees in order

9  to assess the results obtained (*i.e.*, what were the "redemption rates" for the settlement benefits), and

10 now Settlement Class Counsel appears to have disavowed any argument that it is entitled to

11 additional fees based on results obtained. In the interest of justice, however, the Court shall not bar

12 Counsel from raising new arguments as to why it should be awarded additional fees, as well as

13 expenses.

14     Before discussing Counsel's arguments, however, the Court addresses briefly the opposition

15 that was filed by Andre Fleury.[5] The Court has thoroughly reviewed the opposition and finds that

16 the arguments made therein are largely irrelevant to the issue of whether or not Counsel is entitled to

17 additional attorney's fees and expenses. The arguments mostly focus on why the settlement was not

18 reasonable but the Court has already adjudicated that issue. Moreover, the Court notes that, as a

19 factual matter, it never believed that Dennis Warner or Charles Cleves's participation in the lawsuit

20 meant that members of the AWCI supported the settlement. Certainly Counsel never made that

21 representation to the Court. The Court takes this opportunity to emphasize that this Court has never

22 had any reason to doubt Settlement Class Counsel's integrity.

23

24 ─────────────

25     [5] Although Andre Fleury is not a member of the settlement watchmaker subclass, the Court shall, in the interest of justice, consider his opposition as an *amicus* brief.

26     The Court notes that, in his opposition, Andre Fleury also seeks reconsideration of its order
27 denying Sacha Fleury's motion for attorney's fees. *See* Docket No. 332 (order, filed on 11/4/08). That motion is denied. Even if Andre Fleury has standing to challenge the order (the fee motion was made
28 by Sacha Fleury, not Andre Fleury), Andre Fleury has failed to meet the requirements of Civil Local Rule 7-9(b).

**United States District Court**
For the Northern District of California

1   Because Andre Fleury's opposition is largely irrelevant, the Court turns to the specific

2   arguments in favor of additional fees made by Settlement Class Counsel.  The Court concludes that

3   Settlement Class Counsel should be awarded additional fees in the amount of $199,597.50 based on

4   the work performed after July 2008.  The Court has reviewed the billing records submitted and finds

5   that the hours incurred (more than 300 hours over a nine-month period) were reasonable.  Counsel

6   had to incur additional hours on, most notably, the appeal by consumer subclass member Mary

7   Meyer and the motion for attorney's fees filed by watchmaker subclass member Sacha Fleury.  The

8   Court has already found the hourly rates for the attorneys and legal staff members reasonable.  *See*

9   Docket No. 295 (Order at 9).

10   As for the additional expenses incurred after July 2008, the Court also finds these reasonable

11   and therefore awards Counsel an additional sum of $2,371.57.

12   This leaves only the sum of $435,625.10, which, as noted above, Counsel argues it is entitled

13   to based on  "the difficulty of the issues presented, the challenges presented in the case, the

14   protracted and contentious history of this litigation, and the contingent nature of the Settlement

15   Class Counsel's engagement," Mot. at 6, as well as the likelihood that Counsel will need to continue

16   to monitor the settlement.  *See* Mot. at 3.

17   As the Court noted in its previously order, "factors subsumed in the lodestar 'may not act as

18   independent bases for adjustments of the lodestar. . . . [A]ny reliance on factors that have been held

19   to be subsumed in the lodestar determination will be considered an abuse of the trial court's

20   discretion.'"  Docket No. 295 (Order at 7) (quoting *Cunningham v. County of Los Angeles*, 879 F.2d

21   481, 487 (9th Cir. 1988).  For this reason, the Court shall not make an adjustment to the lodestar

22   based on based on the difficulty of the issues presented.  *See Morales v. City of San Rafael*, 96 F.3d

23   359, 364 n.9 (9th Cir. 1996) (noting that "subsumed factors presumably taken into account in either

24   the reasonable hours component or the reasonable rate component of the lodestar calculation"

25   include novelty and complexity of the issues).  Similarly, the Court shall not  make an adjustment

26   based on the challenges presented in the case or the protracted and contentious history of this

27   litigation per se because both have been adequately addressed by the reasonable hour component of

28   the lodestar.

United States District Court
For the Northern District of California

1    Settlement Class Counsel's argument that an upward adjustment of some kind should be

2  made because it will continue to have a role in monitoring the settlement has more merit.  However,

3  any adjustment on this basis would likely be minimal under the circumstances.  There is little for

4  Counsel to do with respect to the consumer subclass because all members have already been issued

5  coupons.  Notably, the billing records submitted by Counsel do not suggest that it has done an

6  inordinate amount of work with respect to the consumer subclass since the Court issued its final

7  approval of the settlement class.  As for the watchmaker subclass, it appears that only nine members,

8  as of April 1, 2009, have even submitted applications to become qualified watchmakers.  Although

9  the application deadline is not until June 12, 2009, it seems unlikely at this point that there will be

10  significant numbers in terms of applications even at that later date.

11    Notwithstanding the above, the Court is still persuaded that there should be a modest upward

12  adjustment in the lodestar based on the contingent nature of Counsel's engagement.

13    It is an established practice in the private legal market to
reward attorneys for taking the risk of non-payment by paying them a
14    premium over their normal hourly rates for winning contingency
cases.  Contingent fees that may far exceed the market value of the
15    services if rendered on a non-contingent basis are accepted in the legal
profession as a legitimate way of assuring competent representation
16    for plaintiffs who could not afford to pay on an hourly basis regardless
whether they win or lose. . . . "[I]f this 'bonus' methodology did not
17    exist, very few lawyers could take on the representation of a class
client given the investment of substantial time, effort, and money,
18    especially in light of the risks of recovering nothing."

19  *Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply System Secs. Litig.)*, 19 F.3d

20  1291, 1299-1300 (9th Cir. 1994) [hereinafter *WPPSS*].

21    To be sure, the Ninth Circuit has stated in at least one case that the contingent nature of a fee

22  agreement is presumably a factor already subsumed in the lodestar.  *See Morales*, 96 F.3d at 364 n.9

23  (citing *City of Burlington v. Dague*, 505 U.S. 557 (1992)).  However, the strict bar against "risk"

24  multipliers seems to be applicable only in statutory fee cases.  In *Dague*, the Supreme Court

25    reasoned that it would be incompatible with fee-shifting statutes to
burden losing parties with a contingency enhancement that has the
26    effect of compensating the winning attorneys for time gambled away
in the contingency cases they lose . . . . This concern, along with
27    concern over the complexity and cost of administering a system of
contingency enhancements in the statutory fee context, drove the
28    Court to the conclusion that "it is neither necessary nor even possible

**United States District Court**
For the Northern District of California

1     for application of the fee-shifting statutes to mimic the intricacies of
       the fee-paying market in every respect."

2

3    *WPPSS*, 19 F.3d at 1300.  But the instant case is not a statutory fee case -- *i.e.*, fees are not being

4    sought pursuant to a motion to enforce statutory fee-shifting rights; therefore the analysis in *Dague*

5    is not applicable.

6          When a common fund case is at issue instead of a statutory fee case, the Ninth Circuit has

7    held that a court has discretion to apply a risk multiplier.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d

8    1043, 1051 (9th Cir. 2002); *WPPSS*, 19 F.3d at 1299-1301.  According to the court,

9          the concerns that drove the [Supreme] Court [in *Dague*] to reject
            contingency enhancements in the statutory fee context apply with
10          much less force in common fund cases.  Unlike statutory fee-shifting
            cases, where the winner's attorneys' fees are paid by the losing party,
11          attorneys' fees in common fund cases are not paid by the losing
            defendant, but by members of the plaintiff class, who shoulder the
12          burden of paying their own counsel out of the common fund.  There is
            nothing unfair about contingency enhancements in common fund cases
13          because of the equitable notion that those who benefit from the
            creation of the fund should share the wealth with the lawyers whose
14          skill and effort helped create it. . . .

15          Thus, the concerns expressed in *Dague* about unduly
            burdening losing parties in statutory fee cases are not present in
16          common fund cases where fees are paid out of the fund.  How the fund
            is divided between members of the class and class counsel is of no
17          concern whatsoever to the defendants who contributed to the fund.  "In
            a common fund case, where there is no direct or immediate danger of
18          unduly burdening the defendant, a court has more latitude in
            exercising its equitable powers to determine whether the plaintiff class
19          should compensate its attorneys for their risk of nonpayment."

20   *Id.* at 1300-01.

21         The instant case, of course, does not fall neatly under *Vizcaino*.  Settlement Class Counsel is

22   not being paid out of a common fund.  *See* Docket No. 332 (Order at 6).  Rather, Defendant has

23   agreed to pay up to $2 million in fees, expenses, and incentive awards as part of the negotiated

24   settlement.  On the other hand, it is significant that Defendant has not objected to Counsel's claim

25   for additional fees up to the contracted-for cap of $2 million.  Thus, payment of additional would not

26   be unduly burdensome (the Supreme Court's concern in *Dague*) since that is what Defendant

27   bargained for.

28

United States District Court

For the Northern District of California

The only question remaining therefore is whether there is evidence of risk in the instant case and, if so what, if any, multiplier is warranted. Settlement Class Counsel has represented that it accepted the case on a contingency basis with no guarantee of compensation. *See* Docket No. 231 (Mot. at 9). The lodestar awarded by the Court compensates Counsel at the market rate, *i.e.*, a noncontingent rate, not an inflated rate that would reflect the risk of nonpayment. *See WPPSS*, 19 F.3d at 1302. Furthermore, as the Court indicated in its order granting approval, Settlement Class Counsel bore risk by virtue of the fact that Plaintiffs' case was predicated on uncertain precedent. Plaintiffs' case was materially different from *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992). *See* Docket No. 278 (Order at 25-27). As a final point, the Court notes that risk can be compounded by the duration of a litigation. *See Vizcaino*, 290 F.3d at 1051 (noting that risk class counsel faced was "compounded by the litigation's duration [eleven years] and complexity"). Here, this case was prolonged far beyond what was reasonably anticipated. Andre Fleury engaged in continuous attempts to derail the settlement, and his conduct threatened to taint the integrity of the class certification process. There was also an appeal by consumer subclass member Mary Meyer and a motion to recover attorney's fees filed by an objector (Sacha Fleury, who is Andre Fleury's son).

As noted above, Settlement Class Counsel asks to be awarded the sum of $435,625.10 for the risk that it assumed, which amounts to a multiplier of approximately 1.30. *See* Mot., Ex. A (providing calculations).[6] Or, to state the matter somewhat differently, Counsel is asking for an enhancement of approximately 30%.[7] The Court does not believe that an enhancement of this size is warranted. In addition to risk, the Court must consider other factors, most notably in this case, the results obtained, which appear relatively meager. *Cf. Van Gerwen v. Guarantee Mut. Life Co.*, 214

---

[6] Previously, the Court awarded Counsel $1,242,921.50 in fees based on the lodestar method. In this order, the Court is awarding Counsel an additional $197,097.50 in fees for work performed after July 2008. Thus, the total fee award based on the lodestar alone is $1,442,519 (*i.e.*, $1,242,921.50 + $197,097.50).

Counsel is asking to be awarded an additional sum of $435,625.10, which would yield a total fee award of $1,878,144.10 (*i.e.*, $1,442,519 + $435,625.10). $1,878,144.10 ÷ $1,444,519 ≈ 1.30.

[7] $1,444,519 • $(x/100)$ = $435,625.10.  $x ≈ 30\%$.

United States District Court
For the Northern District of California

F.3d 1041, 1045 n.2 (9th Cir. 2000) (listing factors relevant to determination of amount of attorney's fees, including factor of results obtained; adding that "results obtained are ordinarily subsumed in the lodestar determination and in most cases should not be considered in the multiplier step"); *Cunningham*, 879 F.2d at 488 (noting that "[a]djustments to the lodestar based on 'results obtained' must be supported by evidence in the record demonstrating why such a deviation from the lodestar is appropriate"). Taking into account the risk involved in the case, as compounded by the duration of the litigation, as well as the need for limited monitoring in the future, the Court concludes that a multiplier of 10% is more appropriate.

### III.   CONCLUSION

For the foregoing reasons, the Court grants Settlement Class Counsel's request for additional fees and costs. More specifically, the Court awards an additional $199,597.50 in fees and $2,371.57 in expenses based on additional work that Counsel performed after July 2008. The Court also awards a 10% multiplier on fees, which amounts to $144,251.90.[8] In sum, Settlement Class Counsel is awarded a total of **$346,220.97** in additional fees and costs.

IT IS SO ORDERED.

Dated: April 14, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

---

[8] The total fees awarded – based on the fees previously awarded and the additional fees awarded here – are $1,442,519 (*i.e.*, $1,242,921.50 + $199,597.50).