# Andre Fleury
## Swiss watch co.

**FILED**

2010 APR 13 A 10: 08

RICHARD W. WIEKING
April 9, 2010
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Clerk Office
450 Golden Gate Ave. 16th floor
San Francisco, CA 94102

Case No. CV 05 04525 EMC

Ref: 1/ Motion to revise and or annul the Final Settlement.
     2/ Mr. Warner, plaintiff and class representative false representation of the case.

Andre Fleury amicus and all others similarly situated watchmakers,
Sacha Fleury members of the class and all others similarly situated watchmakers.

---

Honorable Judge Chen:

Congratulations on your promotion and knowing that you are very busy, we will attempt to make this letter as short as possible and directly to the point.

The extremely poor results of the settlement as reported by Cartier/Richemont, and that you qualified as "meager" undeniably demonstrate that the good faith Cartier/Richemont was supposed to provide has not been achieved.

The results: Document 363 dated 12/04/ 2009:

- *4,552 $100 consumer credits were redeemed by members of the consumer subclass (or others to whom they have transferred the credits);*
- *93 completed watchmaker applications have been received by Richemont; and of the completed applications received, Richemont has approved 3 applications.*

Exhibit A.

---

# Andre Fleury
## Swiss watch co.

The Garden City Group in charge of these applications could not confirm these three open accounts.

---

From the transcript of 08.17.2007, Mrs. Juanita Gonzalez,
Mr. Simon stated the following:

Exhibit B.
Page 16: line 3 to 7:

*"The bottom line is, if you take Mr. Fleury's number of six thousand, or if you take some numbers we've seen of four or five thousand, whatever the number is, even if you get half the people applying, you're substantially increasing the authorized service base for Cartier, and that is opening up the market."*

Mr. Simon stated: *"even if you get half the people applying,"*
That should have been between two to three thousand applications not ninety three as confirmed by Cartier/Richemont.

Exhibit C.
Page 14 line 1 and 2:

*"If that Good Faith is not carried out, we come back to the Court."*

Your Honor, we are respectfully asking that Mr. Simon comes back before the court, as he stated he would, and to have these thousands of accounts open.

---

We must also bring to your attention a letter written and made public by Mr. Warner, plaintiff and class representative in the case. The statements, as reported by Mr. Warner are utterly false.  My multiple attempts to have these statements corrected have failed.

Since your court's good name was used to publicly promote misleading statements about the case, we earnestly ask you to have the record corrected by whatever

---

# Andre Fleury
## Swiss watch co.

means are at your disposal. The publication of these falsehoods has seriously tainted and damaged the integrity of the case.

Whoever Goggles: "Andre Fleury Watchmaker", will see this on the first page:

1. **[PDF]**

   AWCI Board of Directors: President Mark Butterworth has asked me ...
   File Format: PDF/Adobe Acrobat - Quick View
   document presented by **Andre Fleury** that my suggestion of having applicants to the accounts procedure be AWCI Certified **Watchmakers** 21 st. Century (CW21).The ...
   www.awci.com/2010midyear/DWarnerCartier**Fleury**Response.pdf

That leads directly to Mr. Warner's letter filled with his irresponsible false statements.
Mr. Warner's letter is included in its entirety but I will just point out the most important false statements.

Exhibit D.
Page 1: second paragraph of his answer to "Why would I get involved?"

*"He was removed from the case by his actions."*

Page1: 1 second paragraph:

*"Nowhere in the federal case does it state that I am a member of AWCI or its president"*

 Page 2: third paragraph:

*"I was told at that time his lawyers had asked and been granted permission by the court to remove Mr. Fleury from the suit and replace him with other."*

# Andre Fleury
## Swiss watch co.

<u>Page 3</u>: 21.

*Contrary to what Sacha Fleury claims, the declaration of Andre Fleury, se Docket*
*No. 248 does not address tooling. See Docket No. 249 (Sacha Fleury, Obj.at 6).*

| 04/24/2008 | 248 | Declaration of Andrea Fleury in support of Sacha Fleury's Objections re <u>226</u> MOTION for final approval filed by Sacha Fleury. (Bailey, Sloan) (Filed on 4/24/2008) Modified on 4/29/2008 (slh, COURT STAFF). **(filed UNDER SEAL)** (Entered: 04/24/2008) |
|---|---|---|
| 04/24/2008 | 249 | OBJECTIONS re <u>226</u> MOTION for final approval filed by Sacha Fleury. (Bailey, Sloan) (Filed on 4/24/2008) Modified on 4/29/2008 (slh, COURT STAFF). **(filed UNDER SEAL)** (Entered: 04/24/2008) |

I was, of course, never removed from the case and Doc. 248 and 249 are under seal
so it is entirely improper for Mr. Warner to claim that I was removed from the
case, and to make reference to sealed court documents.

<u>Exhibit E.</u>
 Court Transcript of 08, 22, 2007, Mr. Simon stated:

<u>Page 5</u>: line 11:

*"No. Only that Mr. Warner is the current president of AWCI and on the board"*

<u>Page 7</u>: line 8:

*"It has 3,000 members"*

<u>Page 7</u>: lines 14 to 15:

*"So as oppose to any conflict, they would be representative of what the general*
*membership want."*

# Andre Fleury
## Swiss watch co.

*"They"*: represent Mr. Warner president of AWCI and Mr. Cleves, past president.
Mr. Simon and Mr. Warner statements are in direct contradiction.
Someone is knowingly misleading! The case true facts are in jeopardy.

---

Mr. Warner in his letter went on a rant of fifty two lines explaining why you
removed me from the case and misquoted court documents.
The fact that I was never removed from the case makes all these statements false
and moot.
To protect the integrity of the case, these statements must be corrected.

---

Exhibit F.
Mr. Butterworth, actual president of AWCI, Email dated: March 12, 2010.

*"I discussed w/Dennis the question of removal and he did say that the way it came
out he misspoke."*

*"I do agree with you on one thing-a lot of pain and suffering would be avoided if
they would just sell the parts"*

Mr. Warner (Dennis) did admit to current AWCI President Butterworth that he
"misspoke," but Mr. Warner refuses to answer any question about these false
statements or retract and correct these false statements which have been published
on the home page of the AWCI's web site and can be seen while using Google or
any other search engine, by anyone.

---

Exhibit G.
Mr. Simon and Mr. Spellberg made the same misleading statement to Mr. Ryser, a
class member, about me been removed from the case. (June 2007)

*" By this letter I irrevocably confirm that Mr. Spellberg and Miss Hart came to my
office on Monday 11. 2007. They solicited my participation to replace Mr. Fleury
in the Cartier case.*

---

**5** | 523 4th Street, San Rafael. Ca. 94901     Phone: 415 459 7755
          andre@fleury.com   www.fleury.com

# Andre Fleury
## Swiss watch co.

*They presented me with documents to be signed and stated that Mr. Fleury was no longer part of the Cartier case.*

*Upon my request to have this given to me in writing, they confirmed that was not a problem and will do so.*

*"On Monday 11. 2007 at 6:05 PM I received an Email from Mr. Spellberg that read as follows:*

*Quote:Subject: Re : Cartier Settlement*

*Hi Urs, I understand your position about assuring that Andre Fleury is no longer involved before you would want to get involved.*

*Looking forward to discussing that tomorrow. We should not have a problem providing you with that type of letter."*

Exhibit H.
Soliciting clients.

I have mentioned that I was solicited by Mr. Simon and Mr. Spellberg, Mr. Ryser in his letter Exhibit F confirm that he was solicited by Mr. Spellberg, and Mr. Warner in his Email of Sunday, September 23. 2007 wrote this:

*"When I was approached by the attorneys"*

Exhibit I.

Mr. Henning's thread on Horology Matters of April 6, 2010, gives a clear view of the latest parts situation and the state of mind of the independent watchmaker's community, their fears, problems and hope for better days. The consumer restriction and abuse placed upon them by companies is well explained.

Horology Matters has 526 members.

We declare under penalty of perjury that the above statements are true and correct.

# Andre Fleury
## Swiss watch co.

With our best regards.

Cc: Mr. Simon, Mr. Spellberg, Mrs. Gallagher, Mr. Bailey.

# Exhibit A.

## Andre Fleury

**From:** <watchrepairsettlement@gardencitygroup.com>
**To:** "Andre Fleury" <andre@fleury.com>
**Sent:** Wednesday, March 24, 2010 10:56 AM
**Subject:** Re: Fleury V Cartier

Dear Mr Fleury,

Thank you for your email.

No, we do not have this information.

Thank you.

Sincerely,

watchrepairsettlement@gardencitygroup.com

===========================================AH/ MM
This communication (including any attachments) is intended for the use of the intended
recipient(s) only and may contain information that is confidential, privileged or legally protected
Any unauthorized use or dissemination of this communication is strictly prohibited. If you have
received this communication in error, please immediately notify the sender by return e-mail
message and delete all copies of the original communication. Thank you for your cooperation.

"Andre Fleury" <andre@fleury.com>

03/19/2010 03:29 PM

To <watchrepairsettlement@gardencitygroup.com>

cc

Subject Re: Fleury V Cartier

Dear Sir,

Could you confirm that there are three new applicants accepted?

Regards

----- Original Message -----
**From:** watchrepairsettlement@gardencitygroup.com
**To:** Andre Fleury
**Sent:** Friday, March 19, 2010 9:38 AM
**Subject:** Re: Fleury V Cartier

Dear Mr. Fleury,

Thank you for your email.

Applications are mailed upon request. GCG does not have information to respond to your second inquiry.

Sincerely,

3/24/2010

watchrepairsettlement@gardencitygroup.com


=========================================MM/AH

This communication (including any attachments) is intended for the use of the intended
recipient(s) only and may contain information that is confidential, privileged or legally protected
Any unauthorized use or dissemination of this communication is strictly prohibited. If you have
received this communication in error, please immediately notify the sender by return e-mail
message and delete all copies of the original communication. Thank you for your cooperation.


"Andre Fleury" <andre@fleury.com>

03/17/2010 02:36 PM

To <watchrepairsettlement@gardencitygroup.com>
cc
Subject Fleury V Cartier


Dear Sir,

About a week ago I called and asked to be informed of when Judge Chen changed the rule
for Cartier's application, since you asked me if I wanted one.

I was informed that 5 applicants were accepted and received the name of these three
watchmakers and if they are self-employed or by whom they were employed.

Yesterday Amanda who you referred to me for the answer, didn't returned my call.

Please let me know when I can expect a reply by your company.

Best regards

Andre Fleury

## Andre Fleury

**From:** <watchrepairsettlement@gardencitygroup.com>
**To:** "Andre Fleury" <andre@fleury.com>
**Sent:** Friday, March 19, 2010 9:38 AM
**Subject:** Re: Fleury V Cartier

Dear Mr. Fleury,

Thank you for your email.

Applications are mailed upon request. GCG does not have information to respond to your second inquiry.

Sincerely,

watchrepairsettlement@gardencitygroup.com

===========================================MM/AH

This communication (including any attachments) is intended for the use of the intended recipient(s) only and may contain information that is confidential, privileged or legally protected Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.

"Andre Fleury" <andre@fleury.com>                    To <watchrepairsettlement@gardencitygroup.com>

                                                     cc
03/17/2010 02:36 PM                                  Subject Fleury V Cartier

Dear Sir,

About a week ago I called and asked to be informed of when Judge Chen enters the order for Turner's application, since you asked me I've wanted you.

I was informed that 3 applicants were accepted and requested the name of those amor watchmakers and if they are self-employed or by whom they were employed.

A nice lady Amanda who you referred to me for the answer, didn't returned my call.

Please let me know when I can expect a reply by your company.

Best regards

Andre Fleury

# Exhibit B.

1 MANY WATCHMAKERS HAVE QUALIFIED GOING FORWARD AND THAT TYPE OF
2 THING.

3        THE BOTTOM LINE IS, IF YOU TAKE MR. FLEURY'S NUMBER OF
4 SIX THOUSAND, OR IF YOU TAKE SOME NUMBERS WE'VE SEEN OF FOUR OR
5 FIVE THOUSAND, WHATEVER THE NUMBER IS, EVEN IF YOU GET HALF THE
6 PEOPLE APPLYING, YOU'RE SUBSTANTIALLY INCREASING THE AUTHORIZED
7 SERVICE BASE FOR CARTIER, AND THAT IS OPENING UP THE MARKET.

8        I THINK WE HAVE TO TAKE IN PERSPECTIVE A LITTLE BIT THAT
9 -- REMEMBER WHEN THE COURT USED THE WORD "COUPON" WITH RESPECT
10 TO THE CONSUMER SIDE OF IT, THIS IS ACTUALLY A CREDIT, A CREDIT
11 TOWARDS BUYING CARTIER PRODUCTS IN THEIR BOUTIQUES, NOT TOWARDS
12 THE REPAIRS; AND THAT $100 IS GOING TO GO TOWARDS SOMETHING THAT
13 COULD BE PURCHASED IN THE BOUTIQUES, AND THAT'S GOING TO BE AN
14 AUTOMATIC CREDIT THAT'S SENT OUT TO SOMEBODY, NOT SOMETHING
15 SOMEBODY HAS TO APPLY TO GET.  IT'S NOT SOMETHING THAT A PERSON
16 HAS TO DO ANYTHING OR JUMP THROUGH ANY HOOPS TO GET.  IT'S
17 TRANSFERRABLE.  IT'S FUNCTIONALLY THE EQUIVALENT OF CASH, AND
18 SINCE THERE IS BRAND LOYALTY WITH RESPECT TO THESE CARTIER
19 WATCHES, WE THOUGHT IT WAS -- MISS HART WAS THE PRESIDENT OF THE
20 MEDIATION -- TO HAVE A CREDIT PEOPLE COULD USE IN ORDER TO GET
21 SOMETHING FROM CARTIER ACROSS A WIDE VARIETY OF PRODUCTS THAT
22 THEY OFFER.

23        THE COURT:  THE QUESTION IS, WHAT DOES $100 GET YOU IN A
24 CARTIER BOUTIQUE?

25        MR. SIMON:  COUNSEL CAN PROBABLY ANSWER THAT.  THE ANSWER

# Exhibit C.

1 AGREEMENT. IF THAT GOOD FAITH IS NOT CARRIED OUT, WE COME BACK
2 TO THE COURT.

3    WHAT WE WOULD BE MOST CONCERNED ABOUT WOULD BE ARBITRARY
4 PROCEDURES, AND SINCE THE VALUATION FORM IS CONSISTENT WITH
5 RESPECT TO EVERYBODY, AND THERE IS THE NON-DISCRIMINATION CLAUSE
6 THAT YOU MENTIONED, AT LEAST THE INITIAL CHECKS AND BALANCES
7 THAT IS GOING TO BE APPLIED THE SAME WAY TO EVERYBODY ARE IN
8 PLACE.

9    WHEN YOU LOOK AT THE VALUATION FORM, IT'S GOING TO HAVE
10 RATINGS, NUMBERS, DEPENDING ON HOW MANY YEARS YOU HAVE BEEN A
11 WATCHMAKER. YOU GET 10 FOR A CERTAIN NUMBER OF YEARS, MIGHT GET
12 EIGHT FOR A CERTAIN NUMBER OF YEARS, AND ALL THOSE NUMBERS WILL
13 BE WEIGHED AND FACTORED AS TO HOW QUALIFIED A PARTICULAR
14 INDIVIDUAL IS TO PARTICIPATE IN A CARTIER AUTHORIZED SERVICE
15 SITUATION. THEY HAVE ISSUES WITH RESPECT TO TECHNICAL SKILL
16 THEY WANT TO SATISFY THEMSELVES ON; BUT ALSO WHAT THE SHOP LOOKS
17 LIKE. CERTAIN SHOPS, THE WATCHMAKER MIGHT BE PERFECTLY CAPABLE
18 OF REPAIRING WATCHES, BUT THEY HAVE CERTAIN STANDARDS FOR WHERE
19 THEIR WATCHES ARE, AND THEY WANTED TO TRY TO SATISFY THOSE
20 STANDARDS AS WELL.

21    AS YOUR HONOR KNOWS, IT IS DIFFICULT IN CASES TO GET
22 INJUNCTIVE RELIEF THAT TELLS A BUSINESS HOW TO DO THEIR BUSINESS
23 GOING FORWARD, FOR THE MOST PART. SOMETIMES IT HAPPENS IN
24 SECURITIES CASES WITH CORPORATE GOVERNMENTS AND OTHER ITEMS
25 WHERE THERE IS ACTUAL SEC AND FIDUCIARY DUTIES INVOLVED, BUT

# Exhibit D.

## AWCI Board of Directors:

President Mark Butterworth has asked me about my involvement with the Federal Case with Richemont North America, Inc. a Delaware Corporation and Successor to Cartier.

Questions that have been asked:

1. Why would I get involved?

2. Who removed Mr. Fleury from the case and why?

3. Was there a conflict of interest on my part?

4. What changes were made to the original document by the existing and updated sub-class members?

5. Did I receive any monetary reward or preferential treatment from Richemont or Cartier from my involvement?

6. Where does the settlement stand at the present time?

## 1.                          Why would I get involved?

As a person who has repaired watches for over forty years, been elected by the membership to represent them and elected by the Board of Directors to serve as President of AWCI, I felt the need to be involved in a lawsuit against Richemont to substantiate our **"Mission Statement"**. I have stated and it is backed up by the list of plaintiffs in this case: "Andre Fleury, d/b/a SWISS WATCH CO., Mike Mertaban, d/b/a WATCH EXPERTS, Dennis Warner, Charles Cleves, on behalf of themselves and others and all other similarly situated that I was speaking for myself. Nowhere in the federal case does it state that I am a member of AWCI or its president but it was a motivating force behind me becoming involved.

Mr. Fleury contends that everything was going just fine until AWCI, Charles Cleves and I were interjected. How does one interject themselves when there was no awareness of the case until we were contacted by his legal council? Then the question would be "why add more plaintiffs if the lawyer was satisfied with Andre's wants"? He was removed from the case by his actions.

## AWCI Mission Statement

**The American Watchmakers-Clockmakers Institute is the premier international organization dedicated to preserving and promoting the highest standards of workmanship in the horological crafts. It is the role of AWCI to set the standard of**

**excellence to be applied to the quality of instruction for both the restoration and repair practices that are taught worldwide.**

Members have asked for years for AWCI to get involved with the parts issue. This was an opportunity to have our wishes addressed. Someone had to act.

I have always believed that it is better to be criticized for doing something as opposed to being criticized for doing nothing or just talking an issue to death.

At the AWCI Annual Meeting in 2007 I was approached about replacing Andre Fleury in a Federal Lawsuit involving Richemont (Cartier) and their parts distribution policy. I was told at that time his lawyers had asked and been granted permission by the court to remove Mr. Fleury from the suit and replace him with others.

## 2.                    Who removed Mr. Fleury from the case and why?

*From Federal document below:*

(Note #2) Class council withdrew after council and Andre Fleury disagreed about fairness, adequacy and reasonableness of the settlement.

(Note #5) "He sought monetary compensation which was unique to him, was unrealistic, and conflicted with the interest of the class as a whole."

(Notes #16, 19, 21) These notes indicate inaccurate statements, unsubstantiated remarks, subjects not addressed, and statements were not submitted "under penalty of perjury".

### Court notes from

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

Andre Fleury, d/b/a SWISS WATCH CO., Mike Mertaban, d/b/a WATCH EXPERTS, Dennis Warner, Charles Cleves, on behalf of themselves and others and all other similarly situated, and LIZ HART, an individual consumer, on behalf of herself and all others similarly situated

**2. Plaintiffs consist of the Settling Plaintiffs, plus Andre Fleury. Class counsel initially represented Andre Fleury but later withdrew from the representation, with the permission of the Court, after counsel and Andre Fleury disagreed about the fairness, adequacy, and reasonableness of the settlement.**

**5. As discussed below, ultimately, the Court appointed only Mr. Mertaban, Mr. Warner, and Mr. Cleves as representatives of the watchmaker subclass. The Court**

2

never appointed Andre Fleury as a representative for the watchmaker subclass. In an order that was issued after preliminary approval, the Court rejected Andre Fleury's argument that he should be appointed a representative because, inter alia, paper he had filed in the past suggested that he sought monetary compensation which was unique to him, was unrealistic, and conflicted with the interest of the class as a whole. See Docket No. 202 (order, filed on 11/29/2007).

16. The watchmakers in the Fleury submission who were not given the supplemental notice were (1) those who were not U.S. watchmakers (and hence not part of the class) and (2) those who were duplicative of the requests for exclusion and/or objections submitted to the GCG. All other (including the "premature" alleged opt-outs) were provided the supplemental notice.

19 The Court notes that Andre Fleury did not attach to his declaration any document from the Department of Labor substantiating such. The Court also noted that, in his previous filings, Andre Fleury claimed that there were approximately 6,000 independent watchmakers. See Docket No 165 (letter, filed on 9/25/2007).

21. Contrary to what Sacha Fleury claims, the declaration of Andre Fleury, se Docket No. 248, does not address tooling. See Docket No. 249 (Sacha Fleury, Obj.at 6).

In a letter filed with the Court on September 25, 2007, Andre Fleury did represent to the Court that he has "repaired Cartier watches for 40 years and no special tools were ever proposed to me." Docket No. 165 (letter), but that statement was not provided under penalty of perjury. Andre Fleury also represented in the letter that another watchmaker, Jean Bernhard, "was contracted by Cartier (International) (in 1994 and 1995) to repair 280 of their watches (and) no tools were given, suggested, or proposed to him." id., but that statement too was not provided under penalty of perjury. Nor was the letter allegedly sent by Mr. Bernhard authenticated. Even if it were, the letter constitutes hearsay and has marginal relevance since Mr. Bernhard was discussing events more than a decade old.

Similarly, the letter filed by Andre Fleury on October 11, 2007, also was not submitted under penalty of perjury. Se Docket No. 173 (filed on 10/11/2007).

23. The Court noted that, of the potential objectors in the Fleury submission who were given the supplemental notice and an opportunity to clarify their intent, on 60 chose to opt-out. See Part 1.D.2 supra.

-------------------------------------------

I did not agree to join this suit until I got more details. The lawyers and plaintiffs were interested in one or more individuals to represent the needs of the watchmaker; individuals who were working at the bench daily and had parts accounts similar to those of Cartier (Richemont).

I was able to provide the court with the following information from my files:
- What tools did other companies require
- What training was necessary
- What was the physical layout of the shop
- How were parts organized
- What was the initial outlay of cash
- What did the on site interview entail

### 3.                              Was there a conflict of interest on my part?

I did agree to become a part of the case with the understanding of AWCI Executive
Director, AWCI Legal Council, my lawyer in California and the Federal Judge who was
to hear the case that as well as being a practicing watchmaker I was also President of
AWCI. At a later date I was questioned by several members of our Board of Directors if
there was a conflict of interest in me being one of the plaintiffs in the class action suit.
Again I contacted the AWCI legal council, my lawyer and the federal judge with a copy
of the AWCI Constitution. All agreed I was not in conflict. The judge said he would let
me know if I was ever in conflict.

The judge and my council did let me know while making changes to the original
document presented by Andre Fleury that my suggestion of having applicants to the
accounts procedure be AWCI Certified Watchmakers 21st Century (CW21).The
suggestion was a conflict of interest because it would exclude non-members of AWCI.
That requirement was not included in the final settlement.

The Board of Directors was informed of the opinions, but to this day some individuals do
not accept the opinion of the judge or the lawyers. This can be witnessed by the constant
posting on AWI Matters and subsequently on Horological Matters.
During a meeting of the Board of Directors I asked the Director Doug Stuart, who had
many questions about the case and my involvement, to contact my lawyer "Cliff Pearson"
so he could get those questions answered by a professional. He refused. I asked him
several times, always with a no answer. I asked for an explanation. I got none. It is
unknown to me why he did not want to do this.
Director James Sadilek, who was also Vice President of AWCI at the time, volunteered to
make the contact and did. He reported back to the board but let us know that he did not
like or agree with the answers that he received. I do appreciate his efforts.
I was hoping that one or both of these gentlemen would ask to be part of the suit. That
way persons with differing backgrounds, experience and views would be incorporated
into the final settlement. It did not happen.

All of my work in this case was known by the Board of Directors and the lawyers. If I
was in "Conflict of Interest" of the AWCI Constitution, it was the duty and responsibility
of Director Sadilek, Director Stuart or any other director to do more then talk about the
issue ad infintum but to bring a motion of Censure, Impeachment or Recall to the full

board. That would have brought the issue to a conclusion. As any member who has followed this for the past three years, it is evident that a conclusion was not desired.

### 4. What changes were made to the original document by the updated subclass members?

Changes to the original document that benefit watchmakers:
- Watchmakers who are employed by stores that sell and service items other than watches and items such as jewelry and estate pieces will not be excluded.
- The ten-mile restriction for competition will lower to one mile.
- Applicants were expanded to all who possess the necessary skills, equipment and premises
- Cartier will not discriminate between newly qualified and existing authorized dealers

### 5. Did I receive any monetary reward or preferential treatment from Richemont or Cartier from my involvement?

It has been inferred that being involved with the Fleury/Richemont suit I had a monetary gain. **I did not**, nor have I been given any preferential treatment in applying or receiving an account.

### 6.        Where does the settlement stand at the present time?

In the original agreement the applicant had six months from the settlement date to apply for an account. That has been extended, you can still apply.
Requesting an application by email: watchrepairsettlement@gardencitygroup.com
Or calling toll free:  1-800-918-1029 (9 AM to 5 PM PST) Seattle, WA

I hope this answers the questions that have been circulating. Under advisement from my attorney I have not posted until now. I will gladly answer any specific questions you may have or you can call AWCI Headquarters in Harrison, OH for further information.

Information can be found on the internet, Key words "Cartier, Fleury, settlement, Northern District of California"
or on the AWCI.com web page.
Specifically: Andre Fleury, et al. Plaintiffs, v. Richemont North America, Inc, Defendant No.C-05-4525 EMC (Docket No. 226)... Case 3:05-cv-04525-EMC

Case 3:05-cv-04525-EMC    Document 267    Filed 05/19/2008

Dennis Warner CW21

5

# Exhibit E.

INTERVENE AND FILE A SECOND-AMENDED COMPLAINT. AND I, AGAIN,
RECEIVED THE COMMENTS FROM MR. FLEURY ABOUT THE PROPOSED
INTERVENORS. AND I HAVE NOW RECEIVED A RESPONSE CLARIFYING WITH
RESPECT TO MR. CLEVES AND MR. WARNER THAT THEY ARE ON THE BOARD
OF THE AWCI, BUT THEY WERE ELECTED BY THE GENERAL MEMBERSHIP,
NOT APPOINTED BY THE ADVISORY BOARD, WHICH HAS BEEN EXPLAINED TO
ME IN THE REPLY PAPERS IS COMPRISED OF WATCH MANUFACTURERS.
AND, THEREFORE, IF THAT IS INDEED THE CASE I DON'T SEE A
CONFLICT OF INTEREST.

MR. SIMON, YOU HAVE SOMETHING TO ADD TO THAT?

**MR. SIMON:** NO. ONLY TO POINT OUT THAT MR. WARNER IS
THE CURRENT PRESIDENT OF AWCI AND ON THE BOARD, AND MR. CLEVES
IS THE FORMER PRESIDENT AND HAS NO OFFICIAL CAPACITY NOW. SO
THAT'S ONLY A CLARIFICATION AS TO THEIR PARTICULAR CAPACITY AT
THIS MOMENT.

**THE COURT:** ALL RIGHT.

**MR. SIMON:** OTHERWISE, I HAVE NOTHING TO ADD.

**THE COURT:** OKAY.

MR. FLEURY, DO YOU WANT TO ADD ANYTHING MORE TO -- AT
LEAST IN CONNECTION WITH THE AWCI ISSUE THAT NOW THAT YOU'VE
HEARD THE REPLY YOU'D LIKE TO STATE?

**MR. FLEURY:** YES, YOUR HONOR. I THINK IT'S
COMPLETELY IRRELEVANT HOW THEY BECAME OFFICIAL IN THE AWCI. AS
LONG AS THEY ARE WORKING AS AN OFFICIAL WITH THE AWCI, THEN THEY
WILL BE ADVISED BY RICHEMONT, AT LEAST THREE OF THEIR COMPANY

**THE COURT:**  ALL RIGHT. WELL, LET ME ASK MR. SIMON.
IS THERE ANYTHING MORE I SHOULD KNOW ABOUT THE ADVISORY BOARD,
THEIR ROLE, OTHER THAN APPOINTING ONE MEMBER OF A 13-MEMBER
BOARD?

DO THEY HAVE ANY SPECIAL ROLE IN THE GOVERNANCE?

**MR. SIMON:**  NO, YOUR HONOR.  IT'S LAID OUT IN MR.
GILLIGAN'S DECLARATION, WHO HAS BEEN COUNSEL FOR AWCI FOR QUITE
SOMETIME.  IT HAS 3,000 MEMBERS.  TO MY KNOWLEDGE NOT A SINGLE
MEMBER IS A MANUFACTURER. THEY ARE ALL WATCHMAKERS IN SOME
CAPACITY.

THEY ARE THE ONES WHO ELECT THE MAJORITY OF THE
BOARD, ALL BUT ONE MEMBER.  AND THE TWO PROPOSED CLASS
REPRESENTATIVES WERE ELECTED BY THE GENERAL MEMBERSHIP.  SO AS
OPPOSED TO ANY CONFLICT, THEY WOULD BE REPRESENTATIVE OF WHAT
THE GENERAL MEMBERSHIP WANTS.  AND I THINK THE ISSUE IS TOTALLY
IRRELEVANT AND HAS NOTHING TO DO WITH GRANTING THIS MOTION.

**THE COURT:**  ALL RIGHT. ANYTHING MORE THAT YOU KNOW,
MR. FLEURY, ABOUT THE AWCI THAT I SHOULD KNOW?

**MR. FLEURY:**  YES, I HAVE -- I RECEIVED AN E-MAIL
JAMES LUBECK (PHONETIC), WHO AT THAT TIME WAS THE EXECUTIVE
DIRECTOR.

AND HIMSELF TOLD US, TOLD ME:

"AS EXECUTIVE DIRECTOR OF AWCI I CAN'T
PERSONALLY GET INVOLVED IN THIS."

THIS WAS -- THIS CASE WAS SUPPOSED FROM THEM.

# Exhibit F.

## Andre Fleury

| | |
|---|---|
| **From:** | "Andre Fleury" <andre@fleury.com> |
| **To:** | "Mark Butterworth" <bci@muscanet.com> |
| **Sent:** | Friday, March 12, 2010 8:41 PM |
| **Subject:** | Re: Transcript |

----- Original Message -----
**From:**
**To:**
**Sent:** Wednesday, March 03, 2010 6:54 PM
**Subject:** Re: Transcript

Thank you. That will help. I discussed w/Dennis the question of removal and he did say that the way it came out he misspoke. It is fully realized that your att'y filing the class action suit no longer had you as a client. I assume you were representing yourself?

I do agree with you on one thing-a lot of pain and suffering would be avoided if they would just sell the parts.
Enjoy your trip.

Mark A. Butterworth
Butterworth Clocks, Inc.

# Exhibit G.

Urs Ryser                           Kentfield 11 .06.2007
Swiss Timepiece
929 Sir Francis Drake Blvd
Kentfield, Ca 94904


To whom it may concern.
By this letter I irrevocably confirm that Mr. Spellberg and Miss Hart came to my office on Monday 11. 2007. They
solicited my participation to replace Mr. Fleury in the Cartier case.
They presented me with documents to be signed and stated that Mr. Fleury was no longer part of the Cartier case.
Upon my request to have this given to me in writing, they confirmed that was not a problem and will do so.
On Monday 11. 2007 at 6:05 PM I received an E-mail from Mr. Spellberg that read as follows:
Quote :
Subject: Re : Cartier Settlement
Hi Urs, I understand your position about assuring that Andre Fleury is no
longer involved before you would want to get involved.
Looking forward to discussing that tomorrow. We should not have a problem
providing you with that type of letter.
See you tomorrow.
Unquote
The next day Mr. Spellberg, Liz Hart and Mr. Simon came back to my office and again solicited my signature for
these documents.
They did not produced the letter I was promised about Mr. Fleury been out of this case.
This time they assured me that Judge Chen was in the process of having Mr. Fleury dismissed from the case.
I wrote to Mr. Spellberg, Mr. Simon that I would not participate with the final Settlement in this Case as a
representative. \


Best regards
Urs Ryser

## Andre Fleury

**From:** <info@ryserwatches.com>
**To:** "Andre Fleury" <andre@fleury.com>
**Sent:** Wednesday, June 18, 2008 10:29 AM
**Subject:** Fw: Cartier Settlement


—— Original Message ——
**From:** Spellberg, Geoff
**To:** info@swisstimepieces.com
**Sent:** Monday, June 11, 2007 6:05 PM
**Subject:** Re: Cartier Settlement

Hi Urs. I understand your position about assuring that Andre Fleury is no longer involved before you would want to get involved.

Looking forward to discussing that tomorrow. We should not have a problem providing you with that type of letter.

See you tomorrow.
————————————————
Sent from my BlackBerry Wireless Handheld


——Original Message——
From: info@swisstimepieces.com <info@swisstimepieces.com>
To: Spellberg, Geoff
Sent: Mon Jun 11 17:32:45 2007
Subject: Re: Cartier Settlement

Dear Mr.Geoff Spellberg .Corresponding to the meeting from last Friday .I was wondering if you can send me a written letter that states that Mr. Andre Fleury is no longer a Representative for the Watch maker sub- class in this Case . As much I understand is ,that the settlement by Cartier to obtain Watch parts for individual Watchmakers was already accepted by Cartier May 17 2007 .I do not understand why you would like me to participate with the final settlement in this Case as a Representative. I am not in the position to sign any Documents before having more specific information in this case and as long André Fleury is still involved in this Settlement I will not be able to sign any Documents. Please contact me at your convenient.Thank you and best Regards Urs Ryser

415 381-1081

—— Original Message ——
From: Spellberg, Geoff <mailto:gspellberg@meyersnave.com>
To: info@swisstimepieces.com
Cc: Simon, Bruce L. <mailto:bsimon@psswplaw.com>
Sent: Friday, June 08, 2007 2:40 PM
Subject: Cartier Settlement



Hi Urs—

    Thanks for meeting with us again today.  We look forward to seeing you on Tuesday morning.  As I mentioned, I believe that Bruce Simon, the other attorney representing the class with me will come also on Tuesday so that you can meet him.

    I wanted to assure you—just as it is stated in the retainer agreement, you will not ever be responsible for attorneys fees, costs or any expenses incurred in the case. In the unlikely event that the case were to turn out badly, it is Bruce and I and our

# Exhibit H.

## Andre Fleury

**From:**      "Dennis Warner" <dwarner20022002@yahoo.com>
**To:**        <awimatters@yahoogroups.com>
**Sent:**      Sunday, September 23, 2007 5:11 PM
**Subject:**   [awimatters] Re: FLEURY V CARTIER

All members of AWCI,

We all owe Andre a sincere thank you for his
efforts in getting the
Class Action Suit involving Cartier initiated.

I truly believe that before you express your
objection to the Cartier
suit that you read it in its entirety. Since the
original suit was
filed there have been changes that would impact a
greater number of
watchmakers positively. The final version
"Stipulation of Settlement"
is dated Sept.12, 2007. (Andre has made available
as a PDF)

Andre and I disagree on the effect this will have
on the watchmaker.
I am in agreement with the new wording that does
not exclude
watchmakers who are employed by stores that sell
and service items
other than watches; items such as jewelry and
estate pieces. The ten-
mile restriction for competition has been lower to
one mile.

The money that has to be advanced for the parts and
equipment is in
keeping with other prestigious watch lines. Those
doing similar
service may already process a lot of the test
equipment they require.

Not all of us are going to be approved to do
Cartier work but we are
at least being given the opportunity to apply and
be considered.
This is a major step in the right direction.

My name does appear on the new class action suit.
When I was

**Page 2 of 2**

approached by the attorneys I made it clear that I
was not out for
any financial gain but wanted to represent the
watchmaker at the
bench and it was my hope that my position as an
AWCI "CW21"
watchmaker would represent those who daily have
calls to service
Cartier products and who must turn our customers
away due to the
inability to obtain parts.

During the final discussions with the lawyers, the
judge and Charles
Cleves who also was named a plaintiff, Cartier did
accept and
implement the suggestions that favored watchmakers
who would be
applying for an account. These were altered or
added to
the "Evaluation Form".

If you have any questions please call me @512-260-
7125 home after 7
PM CDT, reply via this group or email me :
dwarner6@austin.rr.com

Thank you.

Dennis Warner CW21
Russell Korman Jewelers
Austin, TX

# Exhibit I.

## Andre Fleury

**From:** "w_maker" <mhenning@charter.net>
**To:** <horology-matters@yahoogroups.com>
**Sent:** Tuesday, April 06, 2010 1:21 PM
**Subject:** [Horology Matters] Re: Institute???
Gerald,

I believe that the customers think they are purchasing the watches and thereby have both the right and responsibility to do with them as they see fit... right or wrong, for the good of the watch or to the detriment of the watch. The manufacturers have the right to set limitations under their warranty and the right refuse to repair the watch if the warranty of the watch is violated. Should the customer choose to do something with/to the watch that violates the warranty that is the customer's choice. The manufacturer also has the right to refuse to provide after warranty service for any reason - just like we can do as watchmakers. If we don't want to fix the watch for any reason, we simply refuse.

That's what I think is the right and proper way the purchase and ownership of a watch should work. I

The manufacturers do not appear to see it that way. They say it is part of protecting their brand image. To them, if the watch ever fails to operate satisfactorily it can be seen as a smear on the brand overall. They seek to protect the brand... they do it by attempting to exert control over all service, and doing as much as they can to make sure that the owner of the watch always brings the watch to them for service. And they are trying to force that by removing all other options. To that end, they choke off parts from their repairing competition (watchmakers), and do not even allow parts purchases by watch owners because those parts could then be installed by a competitive repairer. Since that has not entirely worked, they appear to be seeking ways to put their competition out of business permanently by selling inferior tooling at inflated prices, and by choking off required materials like mainsprings so that we cannot make a living doing enough repair volume in vintage work to be in business at all when called upon to repair one of their watches.

In answer to your initial question, they have appointed themselves g ods in this situation. This idea that they are continuing the heritage of the age old and noble craft of watchmaking by manufacturing mechanical timepieces as they have done for hundreds of years (yes I know, spare me the history lesson and don't get sidetracked).. this idea is horsepucky. **YOU are their competition in the marketplace. YOU are the enemy. Every time you fix a watch, they lose a sale. That's a fact. You reduce the need for a new watch.. you reduce the buying pressure.** They are not continuing the tradition, they are killing it by making it impossible for us collectively to continue the tradition through training of the next generation - which we do not do because we fight constantly to make a living, and we do not perceive the trade to be prosperous, so rather than encouraging newcomers, we discourage them... for both their sake, and ours.

I would submit here that a manufacturer's view of the ideal scenario is to make a watch, sell it with a nominal warranty period, honor that period... and after say ten years declare that watch obsolete by no longer manufacturing parts for it. **And during that entire evolution, the consumer views this as acceptable and proper, and views the 10 year life span as the natural life cycle of the watch, and therefore does not feel negatively toward the brand when the watch stops permanently.** In other words, the consumer's expectations are successfully and favorably managed. The brand will of course be the ones to declare the watch dead, and as a sign of good faith, they will offer a small discount on a new watch (same brand of course). They sell a watch to the consumer every ten years, the consumer maintains brand loyalty, and the brand only has to make a movement capable of running long enough to get it through to the next service, at which point they trash it and replace it. AND if you will notice... independent watchmakers do not figure into that picture at all .

So yeah Gerald, I can see why you're pissed off, and I agree with you. And I'll tell you... nothing short of governmental action is going to fix it, and even that occurred, it isn't something I'd bank on to cure the

problem. We are better off working as a group to develop alternative sources for the materials and training we MUST have to continue this craft.

Matt Henning

Reply to sender · Reply to group · Reply via web post · Start a New Topic
Messages in this topic (1)

**RECENT ACTIVITY:** New Members 4 | New Files 1 |
Visit Your Group



Do More for Dogs Group. Connect with other dog owners who do more.

Welcome to Mom Connection! Share stories, news and more with moms like you.

Hobbies & Activities Zone: Find others who share your passions! Explore new interests.

Switch to: Text-Only, Daily Digest · Unsubscribe · Terms of Use