**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8    ANDRE FLEURY, *et al.*,                     No. C-05-4525 EMC

9           Plaintiffs,

10      v.                                         **ORDER DENYING SACHA FLEURY'S**
                                                   **MOTION TO REVISE OR ANNUL**
11   RICHEMONT NORTH AMERICA, INC.,               **FINAL SETTLEMENT; DENYING**
                                                   **SETTLING PLAINTIFFS' MOTION TO**
12          Defendant.                            **SEAL THE FLEURYS' REPLY BRIEF;**
                                                   **AND DENYING IN PART SETTLING**
13   _____/    **PLAINTIFFS' MOTION TO DECLARE**
                                                   **ANDRE FLEURY A VEXATIOUS**
14                                                 **LITIGANT**

15                                                 **(Docket Nos. 364, 453, 454)**

16

17          The above-referenced case, brought as a class action, was settled with the approval of the

18   Court in July 2008. *See* Docket No. 278 (order).  Sacha Fleury, one of the members of the

19   watchmaker class, has now filed a motion to revise or annul the settlement.  Sacha Fleury asserts

20   that he is making the motion on his own behalf as well as all other similarly situated watchmakers.

21   Sacha Fleury's father, Andre Fleury, who opted out of the watchmaker class, has joined in his son's

22   motion to revise or annul the settlement.  Similar to Sacha Fleury, Andre Fleury claims that he is

23   joining the motion as an amicus on behalf of himself as well as all other similarly situated

24   watchmakers.  The Fleurys have further moved to correct certain allegedly false statements made by

25   one of the class representatives in the case, Dennis Warner.

26          Having considered the parties' briefs and accompanying submissions, as well as all other

27   evidence of record, including the dozens of letters submitted by persons who largely appear to be

28   independent watchmakers, the Court **DENIES** both motions.  The Court also **DENIES** the motion

**United States District Court**

For the Northern District of California

1  made by the class representatives to seal the Fleurys' reply brief.  Finally, the Court **DENIES** in part

2  the class representatives' motion to declare Andre Fleury a vexatious litigant.

3                                     **I.    DISCUSSION**

4  A.      Sacha Fleury and Andre Fleury's Status

5          As a preliminary matter, the Court notes that Andre Fleury has no standing to make any

6  request for relief directly because he opted out of the settlement.  To the extent Andre Fleury wishes

7  to make comments as an amicus, the Court shall allow him to do so, but only on his own behalf.  No

8  court, including this Court, has authorized Andre Fleury to represent other watchmakers.

9          The Court shall also consider Sacha Fleury's requests for relief as requests made on his

10  behalf only.  Because Sacha Fleury did not opt out of the class, he has standing to challenge the

11  fairness of the settlement even though he did not submit an application to join the Richemont

12  network.  However, no court, including this Court, has authorized Sacha Fleury to represent other

13  watchmakers.

14         The Court acknowledges that it has received, as noted above, dozens of letters from persons

15  who largely appear to be watchmakers.  These letters appear to have been solicited by the Fleurys to

16  support their requests for relief.  These letters, however, do not make either Andre Fleury or Sacha

17  Fleury a court-appointed representative.

18  B.      Motion to Revise or Annul Final Settlement

19         Sacha Fleury seeks to revise or annul the final settlement, largely on the grounds that the

20  settlement has not succeeded in opening up access to parts to independent watchmakers.  Both

21  Richemont and the class representatives argue that the motion should be denied on procedural

22  grounds alone -- *i.e.*, because the motion is untimely.

23         The Court agrees that the motion is untimely.  Although the Court has retained jurisdiction to

24  enforce the settlement, *see* Docket No. 278 (Amended Stip. of Settlement ¶ 7.11), that does not

25  mean that Sacha Fleury, or any other member of the watchmaker class, has free rein to challenge the

26  merits of the settlement or to seek an annulment or amendment of the settlement itself at any time.

27  Under the Federal Rules of Appellate Procedure, the members of the watchmaker class had thirty

28  days from the date of judgment or the final approval order to appeal this Court's final approval of

                                               2

**United States District Court**

For the Northern District of California

1    the class action settlement.  *See* Fed. R. App. Proc. 4(a)(1)(A).  Sacha Fleury never filed an appeal.

2    Under the Federal Rule of Civil Procedure 59(e), the members of the watchmaker class had twenty

3    eight days from the date of judgment to move to alter or amend the judgment.  *See* Fed. R. Civ. P.

4    59(e).  Sacha Fleury did not file such a motion within the required timeframe.  Finally, under

5    Federal Rule of Civil Procedure 60(b)(3), the members of the watchmaker class had one year from

6    the date of judgment or the final approval order to move for relief from judgment on the basis of

7    fraud, misrepresentation, or misconduct by Richemont.  *See* Fed. R. Civ. P. 60(b), (c).  Again, Sacha

8    Fleury did not file such a motion within the required timeframe.

9            The Court acknowledges that, under Rule 60(b)(6), a party may move for relief from

10   judgment, without any time restrictions, if there is a reason other than those specified in Rule 60(b)

11   that "justifies relief."  Fed. R. Civ. P. 60(b)(6).  But Sacha Fleury cannot invoke Rule 60(b)(6)

12   because the reasons he offers for relief from judgment -- *i.e.*, misconduct on the part of Richemont

13   because an insufficient number of applications have been submitted and/or approved -- may be

14   considered under the more specific clause of Rule 60(b)(3).  *See* 12-60 Moore's Fed. Prac. -- Civ. §

15   60.48[2[ (stating that, "[i]f the reasons offered for relief from judgment could be considered under

16   one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule

17   60(b)(6)").  *See also Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) (noting that, "if the

18   asserted ground for relief falls within one of the enumerated grounds for relief subject to the

19   one-year time limit of Rule 60(b), relief under the residual provision of Rule 60(b)(6) is not

20   available"); *Cotto v. United States*, 993 F.2d 274, 278 (1st Cir. 1993) (noting that "clause (6) is

21   designed as a catchall, and a motion thereunder is only appropriate when none of the first five

22   subsections pertain"; adding that "plaintiffs' attempt to garb their motion in the raiment of clause (6)

23   runs aground on the bedrock principle that clause (6) may not be used as a vehicle for circumventing

24   clauses (1) through (5)").  Moreover, relief under Rule 60(b)(6) is reserved for cases in which there

25   are extraordinary circumstances.  *See* Moore's § 60.48[3].  *See also Lal v. State of Cal.*, No. 08-

26   15645, 2010 DJDAR 9753, 9755 (9th Cir. June 28, 2010) (stating that Rule 60(b)(6) is used

27   "'sparingly as an equitable remedy to prevent manifest injustice'" and that to receive relief under the

28

3

1  rule, "a party must demonstrate "'extraordinary circumstances which prevented or rendered him

2  unable to prosecute [his case]'").

3       No extraordinary circumstances are presented here.  There is no allegation, for example, that

4  Richemont has repudiated the settlement agreement.  *See Keeling v. Sheet Metal Workers Int'l*

5  *Ass'n*, *Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991) (stating that "[r]epudiation of a

6  settlement agreement that terminated litigation pending before a court constitutes an extraordinary

7  circumstance, and it justifies vacating the court's prior dismissal order").  Rather, Sacha Fleury

8  simply claims that the settlement agreement is inadequate.  He makes the same arguments

9  previously presented to and considered by the Court before approving the settlement.  He has not

10 presented any extraordinary circumstance warranting relief under Rule 60(b)(6).

11      Even if the Court were to reach the merits, it would reject Mr. Fleury's challenge.  His

12 assertion that the settling parties engaged in bad faith in violation of the good faith provision of the

13 Settlement Agreement is off base.  Although a provision of the settlement agreement approved by

14 the Court provided that the Court would retain jurisdiction to resolve any disputes under the

15 settlement agreement, "including any . . . breach of the covenant of good faith and fair dealing by

16 any Party" (Docket No. 278 (Amended Stip. of Settlement ¶ 7.11)), this duty of good faith applies to

17 a singular context of Richemont's evaluation of applications to join the network.  As explained in

18 the notice provided to the watchmaker class, this meant that "Richemont's decision on whether to

19 approve an application will be final unless there is evidence that, in applying the criteria set forth in

20 the Evaluation Form, Richemont breached the covenant of good faith and fair dealing, in which case

21 the Court may become involved."  Docket No. 200 (Ex. A) (Not. ¶ IV.B.1).  In the instant case,

22 Sacha Fleury is not making any claim that he submitted an application to become a qualified

23 watchmaker which was unfairly rejected by Richemont.  Indeed, Sacha Fleury never applied to

24 become a qualified watchmaker and therefore he is not entitled to make a challenge that

25 Richemont's decision on his application was rendered in bad faith.  In any event, his interpretation

26 of the scope of the good faith requirements is meritless.

27      As to Mr. Fleury's assertion that there are allegedly four to six thousand members in the

28 watchmaker class but only ninety-three watchmakers have submitted applications to become part of

**United States District Court**

For the Northern District of California

4

**United States District Court**
For the Northern District of California

1   the Richemont network and only nine applications have been approved by Richemont, his assertions

2   have several problems.  First, there is no concrete evidence as to how many persons are in the

3   watchmaker class.  Second, Andre Fleury himself has disclaimed the four to six thousand figure in

4   earlier proceedings before this Court.  *See* Docket No. 278 (Order at 33) (taking note of Andre

5   Fleury's estimate that there are 1,500 members in the watchmaker class).  Third, even assuming that

6   there are at least 1,500 members in the watchmaker class, the fact that only ninety-three have

7   applied does not indicate that Richemont has tried to deter watchmakers from applying or done

8   anything in violation of the Settlement Agreement.

9           Finally, as discussed below, while the fact that Richemont has approved only nine applicants

10   does indicate that access to parts has not significantly opened the Richemont network to independent

11   watchmakers, the Court cannot say that this makes the settlement fundamentally unfair in view of

12   the substantial litigation risk faced by the Plaintiff class.

13           Accordingly, Sacha Fleury's request for relief is **DENIED**.

14   C.       Motion to Correct Mr. Warner's Allegedly False Statements

15           Sacha Fleury has also moved the Court for relief based on allegedly false statements made by

16   Mr. Warner.  This request for relief is also **DENIED**.

17           First, the allegedly false statements were never made in this Court.  Therefore, the Court has

18   no legal basis to address them.  There is no indication that statements have tainted the settlement

19   process, as the settlement terms have already been fixed.  This is not comparable to the situation

20   where Richemont sought to curb Andre Fleury's communications to the class on the basis that they

21   threatened the integrity of the lawsuit and potential settlement.  *See* Docket No. 135 (order).

22   D.       Comments from Other Watchmakers

23           The Court notes that it has received approximately eighty letters in conjunction with Sacha

24   Fleury's currently pending motion [as of 6/18/2010].  Most of these letters were written by persons

25   who profess to be independent watchmakers like the Fleurys.  A number of the persons, however,

26   are not watchmakers but instead are, *e.g.*, consumers or even clock repairers.  These persons do not

27   have any standing to challenge the settlement with respect to the watchmaker class since they are not

28   members of that class.  Moreover, some of the persons who are purportedly independent

**United States District Court**
For the Northern District of California

1  watchmakers do not appear to reside in the United States but rather reside in, *e.g.*, the United

2  Kingdom, New Zealand, Serbia.  These persons also lack standing to challenge the settlement with

3  respect to the watchmaker class because the class is restricted to those watchmakers residing in the

4  United States.  Finally, some of the persons who are purportedly independent watchmakers lack

5  standing because they opted out of the settlement (*e.g.*, Alain Baume, Gianfranco Conscolascio,

6  Gregory Gasper, Rob Hays, John Riesterer, Maurice Lareau, Gerald Schumaker, Robert Shans, Stan

7  Palen).  *See* Docket No. 278 (Order, Ex. B) (listing opt-outs from settlement).

8          While the above-described persons are without standing to challenge the settlement, that fact

9  is largely immaterial since there are some who appear to have standing and who express the same

10  concerns.  (This appears to be due to the fact that the individuals have largely modeled their letters

11  on instructions provided by Andre Fleury.)  The main concerns expressed in the letters are as

12  follows:

13  (1)      The settlement is not fair because the subjective criteria that is part of the evaluation form for

14          watchmaker applicants allows Richemont to, in essence, reject everyone or whomever it

15          pleases.

16  (2)      The settlement has not improved the situation for independent watchmakers.  Richemont has

17          not expanded access to its parts, with only three persons allegedly being qualified by

18          Richemont.

19  (3)      In addition to Richemont, some forty other watch manufacturers are also restricting access to

20          their own parts.

21  (4)      AWCI does not represent the interests of the independent watchmakers (including the

22          authors of the letters).

23  While the Court is not unsympathetic to the position that independent watchmakers are in, it finds no

24  basis to annul or revise the settlement.

25          First, to the extent the watchmakers are trying to annul or revise the settlement and have

26  standing, they face the same obstacle as Sacha Fleury -- *i.e.*, the motions are not timely.  Moreover,

27  there is no indication that any of the watchmakers applied to become part of the Richemont network

28  but was rejected.  Thus, the watchmakers cannot assert any argument that Richemont has acted in

1  bad faith in violation of the Settlement Agreement.  The Court also takes note that it has already

2  addressed the permissibility of the use of subjective criteria by Richemont in its prior order

3  approving the settlement.  The Court stated:

4         Although Richemont has only agreed to include those watchmaker
        applicants that it deems qualified and qualification depends in part on
5         subjective factors, Richemont has presented a legitimate reason
        to include those subjective factors -- *e.g.*, the appearance of a
6         watchmaker's shop (assuming that he or she has point of sale contact
        with consumers) is relevant to preserving the integrity of the Cartier
7         brand.  In addition, although Richemont has discretion to determine
        whether or not a watchmaker applicant is qualified, that discretion is
8         limited, *i.e.*, subject to the covenant of good faith and fair dealing and
        the Settling Parties agree that the Court may become involved should a
9         breach of that covenant be asserted.

10  Docket No. 278 (Order at 29).

11       Second, the Court emphasizes that, while the settlement may not be satisfying to independent

12  watchmakers, the Court concluded settlement was fair because the antitrust case against Richemont

13  (at least) was fraught with significant litigation risks.  *See Yeagley v. Wells Fargo & Co.*, No. C

14  05-03403 CRB, 2008 U.S. Dist. LEXIS 5040, at *8 (N.D. Cal. Jan. 18, 2008) ("The Court finds that

15  while the settlement offers little of value to the class, plaintiff's case is weak and the class could not

16  do better if the Court rejected the settlement.").  Discovery revealed that there were approximately

17  fifty watch repair shops independent of Richemont (*i.e.*, Richemont had no direct economic interest)

18  who were part of the authorized network (*i.e.*, who had access to Cartier parts).  *See* Docket No. 278

19  (Order at 25-26).  Arguably, this situation made the instant case markedly different from *Eastman*

20  *Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451 (1992).  *See also Sports Racing Servs. v.*

21  *Sports Car Club of Am.*, 131 F.3d 874, 887-88 (10th Cir. 1997) (noting that "[a]n illegal tie may be

22  found where the seller of the tying product does not itself sell the tied product but merely requires

23  the purchaser of the tying product to buy the tied product from a designated third party rather than

24  from any other competitive source that the buyer might prefer" but adding that, "where a third party

25  is involved in selling the tied product to the plaintiff, most courts have required that the tying

26  product seller have a direct economic interest in the sale of the tied product before an illegal tying

27  arrangement will be found"); *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Sys., Inc.*, 732

28  F.2d 1403, 1407-08 (9th Cir. 1984) (holding no illegal tying arrangement where airline offered

**United States District Court**
For the Northern District of California

7

**United States District Court**

For the Northern District of California

1   discount air fares -- the tying product -- only if the customer purchased car rental services from a

2   designated third party because there was no showing the airline had an adequate economic interest in

3   the car rentals); Roberts v. *Elaine Powers Figure Salons, Inc.*, 708 F.2d 1476, 1479-81 (9th Cir.

4   1983) (examining whether seller of tying product had an economic interest in the tied product sold

5   by a third party).

6          Third, the Court is not without sympathy with respect to the plight facing independent

7   watchmakers as they face restrictions with respect to access to parts from not only Richemont but

8   also other watch manufacturers.  But this case resolved only antitrust claims against Richemont, and

9   not against other watch manufacturers.

10          Finally, the Court reiterates that AWCI has never been a party or even a direct participant in

11   the litigation.  Mr. Warner, for example, was a class representative in his individual capacity only,

12   not in any official capacity for AWCI.  The fact that the Court ordered notice of the settlement to be

13   provided to the AWCI for posting on its website, *see* Docket No. 200 (Order at 3-4); Docket No. 278

14   (Order at 12), does not thereby make AWCI a party to the litigation.  The Court also notes that none

15   of the parties involved in the litigation (which included the Fleurys) suggested the posting of the

16   notice on any other website affiliated with watchmakers.  *See* Docket No. 78 (Order at 12 n.13).

17   E.     Motion to Seal

18          The class representatives have moved to seal the reply brief filed by the Fleurys in support of

19   the above motions.  The class representatives' motion to seal is denied.  Although the Court is not

20   unsympathetic to the concerns of counsel for the class representatives that they are being unfairly

21   attacked, this order reaffirms that Sacha Fleury's (as well as Andre Fleury's) charges against counsel

22   are unwarranted.

23   F.     Motion to Declare Andre Fleury a Vexatious Litigant

24          Finally, the Court addresses the motion made by the class representatives to have Andre

25   Fleury declared a vexatious litigant.  Normally, a vexatious litigant is one who abuses the judicial

26   process by filing meritless and repetitive lawsuits.  *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d

27   812, 817-18 (4th Cir. 2004) (stating that a court has the authority to issue a prefiling injunction

28   against a vexatious litigant; adding that such an injunction is warranted when a litigant has

8

**United States District Court**

For the Northern District of California

1  continually abused the judicial process by filing meritless and repetitive actions).  Because no claim

2  has been made that Andre Fleury has initiated multiple meritless and repetitive lawsuits, the Court

3  shall not declare him a vexatious litigant.

4        The Court notes, however, that through their motion, the class representatives do not seek to

5  bar Andre Fleury from initiating new lawsuits in this District or in any other court.  Rather, they ask

6  only that, with respect to this lawsuit, Andre Fleury be compelled to obtain advance permission from

7  the Court before filing any additional document.  The Court finds that it has authority to take the

8  action requested by the class representatives pursuant to Federal Rule of Civil Procedure 23(d)(1).

9  *See* Fed. R. Civ. P. 23(d)(1) (providing that, in conducting a class action, a "court may issue orders

10 that . . . determine the course of proceedings or prescribe measures to prevent undue repetition or

11 complication in presenting evidence or argument").  The only question is whether the relief

12 requested is appropriate.  The Court concludes that it is.

13       As reflected by the docket in this case, Andre Fleury -- either directly or through his son

14 Sacha Fleury -- has made numerous filings which have unnecessarily and unduly hampered this

15 litigation.  While his initial opposition to the draft Settlement Agreement was of some value and was

16 given due consideration by the Court in the approval proceedings, many filings including the instant

17 motion were meritless.  This has placed burden not only on the Court but also counsel for Richemont

18 and counsel for the class, which have been compelled to respond to Andre Fleury's filings.  The

19 Court therefore deems it appropriate to require Andre Fleury obtain permission from the Court prior

20 to filing a new document in this lawsuit.  The Court notes that it is not imposing any such

21 requirement on Sacha Fleury, Andre Fleury's son, but adds that it will not look favorably upon any

22 submission from Sacha Fleury which is essentially "ghost written" by his father.  Sacha Fleury risks

23 imposition of sanctions should he submit papers in essence on his father's behalf without first

24 obtaining leave of the Court.

25       As a final point, the Court provides guidance as to what kinds of motions may be

26 appropriately filed in this action.  First, if a watchmaker has applied to become part of the

27 Richemont network, has been rejected by Richemont, and has a good faith basis for believing that

28 the rejection was not warranted, then a request for relief may be made to this Court -- *i.e.*, on the

9

United States District Court

For the Northern District of California

1   basis that Richemont did not in good faith rule on the application to become a qualified watchmaker.

2   Second, a motion for relief from judgment may be filed pursuant to Rule 60(b)(4)-(6) but only if

3   filed within a reasonable time.  *See* Fed. R. Civ. P. 60(c).  Given that the order of final approval in

4   this case issued in July 2008, *see* Docket No. 278 (order) -- *i.e.*, approximately two years ago -- any

5   such motion may well be found untimely.  Moreover, any motion made pursuant to Rule 60(b)(6)

6   must demonstrate extraordinary circumstances and further must *not* fall within one of the

7   enumerated grounds for relief subject to the one-year time limit of Rule 60(b) -- *i.e.*, Rule 60(b)(1)-

8   (3).  No other motions challenging the Settlement Agreement may be filed.

## II.    CONCLUSION

10          For the foregoing reasons, Sacha Fleury's requests for relief are denied.  The class

11   representatives' motion to seal is denied and their motion to declare Andre Fleury a vexatious

12   litigant is denied in part.

13          This order disposes of Docket No. 364 and 454.

14

15          IT IS SO ORDERED.

16

17   Dated:  July 2, 2010

18                                                        _____
                                                         EDWARD M. CHEN
19                                                        United States Magistrate Judge

20

21

22

23

24

25

26

27

28

10